**Chad T. DUBOIS, Plaintiff,**

v.

**ALDERSON–BROADDUS COLLEGE, INC., and Dr. Paul Bennett, Defendants.**

**Civil Action No. 2:95cv2.**

United States District Court, N.D. West Virginia.

Jan. 24, 1997.

---

### *ORDER*

MAXWELL, District Judge.

Plaintiff, now proceeding *pro se*, seeks to pursue his remedies in the above-styled civil action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1974, 29 U.S.C. § 794, the West Virginia Human Rights Act, *West Virginia Code* § 5–11–1, *et seq,* and the common law of West Virginia. Plaintiff's complaint essentially alleges that defendants failed to provide reasonable accommodations for his learning disability and breached an agreement to provide certain accommodations.

On November 25, 1996, the defendants filed a Motion for Summary Judgment and memorandum in support. By Order entered November 26, 1996, the Court provided plaintiff with notice of an opportunity to respond. *See, Roseboro v. Garrison,* 528 F.2d .309 (4th Cir.1975) (*pro se* litigant must be given meaningful notice of opportunity to respond to a motion for summary judgment). Plaintiff was advised of his right to fully respond to the motion and was further advised that failure to oppose the motion may result in the entry of summary judgment in favor of the defendants. Plaintiff has not

responded to the defendants' Motion for Summary Judgment.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, and which are genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

Although the plaintiff has not responded to the defendants' motion for summary judgment, the Court has, nevertheless, carefully studied the Complaint and has reviewed the evidence received in February 1995, particularly the testimony of the plaintiff, to determine whether a genuine issue of material fact precludes summary judgment.[1]

The complaint alleges that plaintiff was admitted to the Physician Assistant's (P.A.) program at Alderson Broaddus College in 1992 and that he was diagnosed with a learning disability in March 1994. The complaint further alleges that plaintiff asked for accommodations from the defendants for his learning disability and that the defendants agreed to certain, temporary accommodations subject to further substantiation of a specific learning disability.[2] The complaint also alleges that, after agreeing to accommodate plaintiff's disability, the defendants retracted the accommodations they had agreed to make.[3]

The complaint raises four separate causes of action. It is alleged that defendants' conduct violates 1) the Americans with Disabilities Act (ADA); 2) § 504 of the Rehabilitation Act of 1973; 3) the West Virginia Human Rights Act; and 4) breaches the accommodations contract entered into between plaintiff and defendants.

In passing the ADA, Congress recognized that physical or mental disabilities affect more than 43,000,000 Americans whom society has tended to isolate or segregate be-

---

**1.** Plaintiff sought a temporary and permanent injunction requiring defendants to:
    1. Allow plaintiff to continue in the Physician Assistant's program pending resolution of the case;
    2. Accommodate plaintiff's disability;
    3. Permit plaintiff to re-take any exam for which he did not receive accommodations; and
    4. Permit plaintiff to complete, with reasonable accommodations, any work for the course from which he withdrew.

**2.** The accommodations included oral administration of exams and quizzes or additional time to take written examinations. Ex. A to Complaint (Defendant's Ex. 13).

**3.** The "retraction" allegedly occurred when the Vice–President for Student Services wrote a letter to plaintiff requiring him to give 48–hour notice to his teachers if he desired to have a quiz or examination administered orally. Ex. B to Complaint (Defendant's Exhibit 16). Plaintiff does not refute that this requirement was imposed to allow the defendants an opportunity to schedule available instructors to administer exams orally.

cause of their disabilities. 42 U.S.C. § 12101(a)(1) and (2). Congress found that such discrimination exists in the areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services. 42 U.S.C. 12101(a)(3). The Act's Subchapter III, which became effective on January 26, 1992, provides as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The act further specifies that discrimination includes a "failure to make reasonable modifications in policies, practices, or procedures" when such modifications are necessary to afford the services to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

A "place of public accommodation" includes an undergraduate private school or other place of education. 42 U.S.C. § 12181(7)(J). The defendants do not contest they are subject to the provisions of the ADA, and in fact, the evidence reflects that A–B College is aware of its responsibilities under the ADA and the Rehabilitation Act.

The Rehabilitation Act, 29 U.S.C. § 794, also prohibits discrimination against persons with disabilities. It provides, in pertinent part,

> No otherwise qualified individual with a disability in the United States, as defined in § 706(8) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance. . . .

Section 794a provides that remedies available under Titles VI and VII are available to redress complaints brought under the Rehabilitation Act.

█ Many provisions of the ADA were based on the Rehabilitation Act. Much of the case law which existed under the Rehabilitation Act has become precedent for many ADA decisions. Accordingly, the Court believes that its discussion of disability and accommodation are jointly applicable to the discrimination counts in the Complaint. The primary question in this case is whether plaintiff is an otherwise qualified disabled individual and, if so, whether defendants provided appropriate accommodations.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A). An entity discriminates against a disabled individual when it fails: .

> to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii). Another provision of the ADA also appears applicable. Section 12189 of Title 42 provides, in pertinent part:

> Any person that offers examinations or courses . . . shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

█ In order to prevail on his discrimination claims, plaintiff must show:

1. That he is disabled;

2. That his requests for accommodations are reasonable; and

3. That those requests have been denied.

*D'Amico v. New York State Bd. Of Law Examiners,* 813 F.Supp. 217, 221 (W.D.N.Y. 1993).

█ As stated, the term "disability" is statutorily defined as a physical or mental impairment that substantially limits one or more of the major life activities of an individual. Department of Justice regulations further describe disability with respect to an

individual as encompassing "[a]ny mental or psychological disorder such as ... specific learning disabilities." 28 C.F.R. § 35.104(2). Plaintiff must show that he suffers from a "specific learning disability." *Argen v. New York State Bd. of Law Examiners,* 860 F.Supp. 84, 87 (W.D.N.Y.1994).[4]

The regulations for the ADA refer to, but do not define, specific learning disabilities. At least one court has relied upon the definition of "children with specific learning disabilities" in the Individuals with Disabilities Education Act (IDEA):

> The term "children with specific learning disabilities" means those children who have a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, which disorder may manifest itself in imperfect ability to listen, think, speak, read, write, spell, or do mathematical calculations. Such disorders include such conditions as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia. Such term does not include children who have learning problems which are primarily the result of visual, hearing, or motor disabilities, of mental retardation, of emotional disturbance, or of environmental, cultural, or economic disadvantage.

*Argen,* 860 F.Supp. at 87–88 quoting 20 U.S.C. § 1401(a)(15).

During the February 1995 hearings, substantial evidence was received whether plaintiff had properly established that, at the time he requested accommodations from the defendant, he suffered from a specific learning disability. Using the objective standard established in *Argen,* at the time he requested accommodations from the defendants, plaintiff had not shown that he had a specific learning disability.

At all times pertinent to the instant cause of action, Alderson Broaddus College maintained a written policy outlining the process with which a learning disabled student must comply to obtain academic support. The written policy required the student to provide documentation of a learning disability which must include:

> 1. The results of a Wechsler Adult Intelligence Scale (WAIS); and
>
> 2. A written evaluation, including a discrepancy analysis, completed by a licensed psychologist or certified learning disability specialist, indicating the specific learning disability or disabilities. This evaluation must be no older than three (3) years.

Defendant's Ex. 2 (2/95 Hearings). The plaintiff does not contend that this policy violates the ADA or imposed undue burdens on the plaintiff.

Pursuant to this policy, the West Virginia Division of Rehabilitation Services referred plaintiff to Thom Zahler, M.S., in March 1994. The report reflects that plaintiff refused to take the Minnesota Multiphasic Personality Inventory (MMPI), although this was the pre-approved personality assessment in the battery. The report also reflects that, because plaintiff expressed concerns about the length of the battery of tests to be given, the Kaufman Brief Intelligence Test (K–BIT) was substituted for the Wechsler Adult Intelligence Scale (WAIS–R).

The psychological report concluded that plaintiff "might suffer from a specific learning disability." Under the recommendations section of the report, Mr. Zahler stated that:

> The results of the current assessment suggest that Chad does suffer from a learning disorder involving expressive language. With the current assessment, the nature and degree of seriousness cannot accurately be determined. It might be helpful to administer the Woodcock–Johnson, and/or other cognitive assessments in order to be more specific in targeting services for him.

It is clear that Mr. Zahler did not diagnose a specific learning disability.

In May 1994, plaintiff was advised by the Academic Dean that Mr. Zahler's evaluation was insufficient, noting that the report failed to definitively conclude that plaintiff has a specific learning disability. Plaintiff was ad-

---

**4.** The *Argen* case involved opposing expert witnesses who could not agree whether the plaintiff had a specific learning disability. The magistrate judge found that use of an objective standard to define learning disability was appropriate.

vised that further information was being requested from the Division of Rehabilitation Services.

Thereafter, a questionnaire was sent to the Division of Rehabilitation Services. Based upon the responses received, the Academic Dean advised plaintiff in May 1994 that he did not meet the criteria for special accommodations.[5]

In June 1994, plaintiff submitted to the defendants a psychological consultant's report prepared by Samuel Goots, Ph.D., apparently at the request of the West Virginia Division of Rehabilitation. Dr. Goots did not personally examine the plaintiff but reviewed records and test scores previously performed. Dr. Goots concluded that plaintiff has a learning disability and would require extra effort in the area of reading and writing. Dr. Goots further suggested that plaintiff should have help in reading instructions and more time for testing in college courses.

As a result of Dr. Goots' report, the Division of Rehabilitation Services declared the plaintiff eligible for services due to a specific learning disability and recommended that he be permitted to use a tape recorder; have oral testing; use tapes or audio books; and have extended testing time.

After a letter was sent to the President of the College by plaintiff's former counsel, A–B College agreed to make certain accommodations for plaintiff during the first semester of the 1994–1995 academic school year. By letter dated July 27, 1994, plaintiff was advised that the defendant college would provide oral testing and extended time for major examinations and was further advised that the accommodations would not be extended beyond the first semester unless the plaintiff submitted the results of Wechsler Adult Intelligence Scale testing. Plaintiff was expressly advised that the testing submitted thus far was not adequate to document a learning disability.[6] After some negotiations with plaintiff's former counsel and after a

meeting at which plaintiff attended, a letter memorializing the accommodations was sent to plaintiff by letter dated September 8, 1994.

The parties agreed that examinations would be administered orally and/or under an extended time of up to 30 additional minutes. The letter expressly provides that it was plaintiff's responsibility to discuss these options with his professors. It was also agreed that plaintiff would be given a one-day extension to perform "written projects." Plaintiff was once again reminded that his current evaluation did not meet the standards established by A–B policy for learning disabilities and that he must take the Wechsler Adult Intelligence Scale (WAIS) in order to meet those standards.

Plaintiff did not take the WAIS during the Fall Semester. As of the February 1995 hearings, plaintiff had not taken the WAIS. In September 1996, the Court received a letter from John W. Balchunas, M.S., a licensed psychologist, who represents that he conducted a comprehensive evaluation of the plaintiff in April 1995. Mr. Balchunas' letter advises that plaintiff has a learning disability; however, the evaluation was not attached to the correspondence nor has plaintiff ever filed Mr. Balchunas' psychological report as part of the record. To this day, therefore, the Court is not advised whether plaintiff was administered the WAIS.

Based upon the uncontroverted evidence presented, in the Fall of 1994, plaintiff had not properly documented that he suffered from a specific learning disability which entitled him to accommodations. To this date, plaintiff has not properly established that he suffers from a specific learning disability.

■■■ Even if the Court assumes that a genuine issue of fact exists with regard to whether plaintiff properly demonstrated a specific learning disability, the plaintiff has not been able to present any evidence to show that defendants breached their tentative agreement to provide accommodations

---

**5.** The letter reflects that the decision was based upon current guidelines utilized by the West Virginia Public Schools.

**6.** The Court finds that the February 1995 testimony of Dr. Yura accurately and objectively sets

forth the proper procedure for diagnosing a specific learning disability. The defendants' request that plaintiff take the WAIS to document a specific learning disability was not unreasonable.

nor was plaintiff refused reasonable accommodations for an alleged specific learning disability. Reasonable accommodations do not require an educational institution "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370–71, 60 L.Ed.2d 980 (1979). Accommodations are not reasonable if they impose "undue financial and administrative burdens" or if they require a "fundamental alteration in the nature of [the] program." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (citations omitted).

■ In his complaint and during his testimony, plaintiff emphasized two instances which he believes demonstrate defendants' failure to accommodate his learning disability. He suggests that Nancy Stull, his instructor in Radiography, refused his request to take quizzes and exams orally. Moreover, because plaintiff was failing this course, he asked the instructor if he could re-take his exams and earn extra credit to achieve a passing mark. The request was refused, and plaintiff withdrew from the class. Subsequently, other students in the course were given an opportunity to earn extra credit points. Plaintiff contends that he was, therefore, discriminated against based upon his disability.

The defendants were not required to permit the plaintiff to "re-take" exams. Moreover, Instructor Stull did not refuse plaintiff's request for an oral exam. She merely advised plaintiff that he would need to produce a tape recorder, and she would record the exams in advance for the plaintiff. The Court does not believe that Instructor Stull's request was unreasonable nor does it breach the defendants' written agreement to provide certain accommodations. However, even if a factual dispute exists, the plaintiff withdrew from the Radiography class to avoid a failing mark. This course did not cause his removal from the Physician Assistant's program.

During his testimony, plaintiff elaborated on another instance which he contends constitutes defendants' failure to accommodate his disability. In this instance, plaintiff contends that an instructor refused to give him extended time to perform a physical exam. It is this course in which plaintiff received the failing mark and it is for his failure of this course that plaintiff was suspended from the Physician Assistant's program.

The undisputed evidence reflects that the students were notified at the beginning of the semester that the completion of a physical exam would be required in the course. It is also undisputed that the sign-up sheet for performing the physical exam was posted on November 4, 1994, and that other students had signed up for time slots available after the week of November 14, 1994. On November 14, 1994, plaintiff met with Cheryl Bowers, the instructor of this course, and requested that he be permitted to perform his physical exam the week of December 5. The only remaining time slots were November 15 and November 18, and the request was denied. Plaintiff failed to show for his physical exam on November 18, and he received a failing grade in this course.[7] The defendants were under no obligation to provide the defendant with additional time to perform his physical exam. This failing grade and a previous deficiency received in 1992 precluded plaintiff from continuing in the Physician Assistant's program.

The evidence presented at the February 1995 hearings overwhelmingly supports the conclusion that reasonable measures were made to accommodate the plaintiff's alleged learning disability. Plaintiff demonstrated no personal responsibility for meeting with his teachers at the beginning of the semester to make arrangements for these accommodations. Moreover, plaintiff failed to take advantage of the available accommodations, as well as other assistance which was offered by all of his instructors and school administration.[8] Any further accommodations which

---

7. In addition to his failure to perform the physical examination, the plaintiff failed to attend one of four clinical assignments and had two unexcused class absences.

8. It is clear that plaintiff waited until the situation in a course reached crisis proportions before he consulted with the instructor, at which time he would request unreasonable accommodations

were requested by plaintiff would be unreasonable given the nature of the Physician Assistant's program. In short, to accept what plaintiff asked his instructors to do would result in the lowering of the standards of the Physician Assistant's program.

Having considered all matters of record in conformity with the requirements of Rule 56(c), the Court finds that the plaintiff has not demonstrated that he suffered from a specific learning disability, that the defendants failed to provide reasonable accommodations for an alleged learning disability, or that the defendants breached an agreement to provide accommodations for an alleged learning disability. Accordingly, it is

**ORDERED** that defendants' Motion for Summary Judgment be, and the same is hereby, **GRANTED.** It is further

**ORDERED** that the Clerk of Court shall enter judgment for the defendants on all counts of the Complaint. It is further

**ORDERED** that, in the event plaintiff desires to appeal the decision of this Court, written notice of appeal must be received within thirty (30) from the date of the entry of the judgment order.

which would have given him a significant advantage over his non-disabled classmates.