**Marie C. D'AMICO, Plaintiff,**

v.

**NEW YORK STATE BOARD OF LAW EXAMINERS, Defendant.**

No. 93–CV–6051L.

United States District Court,
W.D. New York.

Feb. 17, 1993.

**218**

Fred G. Aten, Jr., Harter, Secrest & Emery, Rochester, NY, for plaintiff.

Charles D. Steinman, Asst. Atty. Gen., Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Marie C. D'Amico, commenced this action pursuant to the Americans With Disabilities Act ("the ADA"), 42 U.S.C. § 12101, *et seq.* against the New York State Board of Law Examiners ("the Board"). Plaintiff seeks a preliminary injunction to compel the Board to provide her with certain requested accommodations when she sits for the New York State Bar Exam on February 23 and 24, 1993 ("February exam"). For the reasons that follow, plaintiff's motion is granted and the Board is directed to provide plaintiff with her requested accommodations for the February exam. Specifically, the Board is required to provide plaintiff with the same accommodations that she received when she sat for the New York State Bar Exam on July 28 and 29, 1992 ("July exam") and, in addition, a four day testing schedule consisting of six hours of testing per day plus a one hour lunch break.

## FACTS

Plaintiff suffers from a severe visual disability. She has marked myopia ("nearsightedness") and bilateral partial amblyopia. Although plaintiff wears glasses, her medical condition cannot be corrected to achieve 20/20 vision. With visual aids, her vision is 20/50 in the right eye and 20/70 in the left eye. As a result, plaintiff has an extremely difficult time reading, finds it nearly impossible to read normal size print, and suffers from ocular fatigue and a "lazy eye" condition which is marked by dimness of vision. Her visual difficulties worsen when she reads for extended periods of time and this causes blurring, tearing, and a burning sensation, and she must take frequent breaks to rest her eyes.

Plaintiff graduated from the State University of New York at Buffalo School of Law in 1992 and she registered for the July bar exam. In anticipation of taking the July exam, plaintiff petitioned the Board pursuant to 20 N.Y.C.R.R. § 6000.4, and requested certain accommodations for her disability. Plaintiff was provided with a large print exam and she was permitted to bring her own lamp and straight edge to a separate exam location where she and another applicant took the exam in the presence of a proctor. In addition, plaintiff was allowed nine and one half hours on July 28 and nine hours on July 29, to com-

plete the exam.[1] Plaintiff was also given permission to write the answers to the multiple choice portion of the July exam in the question books instead of on the computer answer sheet.

In November, plaintiff was notified that she failed the July exam and she registered to sit for the February exam. On the advice of her physician, plaintiff requested similar accommodations to those provided during the July exam, and in addition, she requested that the Board allow her to take the exam over a period of four days instead of two. This request to take the exam over four days is the only matter in dispute.

The Board denied plaintiff's request to take the exam over a four-day period, although it granted her other requests. The Board agreed to provide plaintiff with the following accommodations:

1) a separate testing room with enhanced lighting and the opportunity to bring her own lamp,

2) a large print copy of the examination and, if requested, a taped copy of the examination and the services of an amanuensis to serve as a reader/writer,

3) permission to bring a ruler and to write the answers to the multiple choice portion of the Bar exam in the question booklet instead of on the computer answer sheet, and

4) permission to take the Bar exam on February 23 and 24, 1993 with freedom to specify the actual examination times desired.

Plaintiff commenced this action pursuant to the ADA to compel the Board to provide her with "reasonable accommodations" to take the bar exam over four days rather than two days.

The parties filed affidavits and legal memoranda and the Court conducted a hearing on February 12, 1993. At the hearing, the parties stipulated to several matters. First, the Board conceded that the ADA was applicable to the Board and its examination procedure and that it was required to make "reasonable accommoda-

tions" for disabled applicants who desired to take the February exam.

Second, the Board represented that even before the ADA, the Board made necessary accommodations to those with *bona fide* disabilities. The Board has now adopted regulations pursuant to the ADA setting forth the procedure for applicants to request accommodations based on disability.

Third, the Board agreed that plaintiff suffered from a *bona fide* disability and that they were required to provide her with reasonable accommodations. In fact, the Board agreed to all of the accommodations requested by plaintiff except for her request that she be allowed to take the exam over four days rather than the standard two days. The Board was willing to give plaintiff extra time to take the exam on the two scheduled exam days, but the Board was adamant in its refusal to grant plaintiff leave to take the exam over four days.

Both sides agree then that plaintiff, because of her condition, is entitled to "reasonable accommodations" when she takes the February exam. The dispute here relates solely to the extent of the accommodations that should be provided to this applicant based on her particular disability.

## DISCUSSION

The standards for obtaining a preliminary injunction are well established in this circuit. The moving party must show that it is likely to suffer possible irreparable injury and "either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balancing of hardships in its favor." *Reuters Ltd. v. United Press Int'l*, 903 F.2d 904, 907 (2d Cir.1990), quoting, *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982). *See also Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *New York v. Nuclear Regulatory Comm'n*, 550 F.2d 745, 750 (2d Cir.1977).

---

**1.** The allotted time for all other applicants was six and one-half hours on July 28 and six hours on July 29.

"Where, however, the grant of the preliminary injunction will give the movant essentially all the relief [she] seeks, the injunction is often deemed mandatory rather than prohibitory, and a somewhat higher standard is applied, under which the movant must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success." *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988), citing, *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025–26 (2d Cir.1985).

The granting of plaintiff's preliminary injunction will give her all the relief she requests, she must therefore, show the presence of an irreparable injury and a substantial likelihood of success on the merits.

## I. Irreparable Harm

Plaintiff claims that she will suffer irreparable harm because it will be extremely difficult for her to take and pass the February exam with her disability unless the Board grants her the accommodations she seeks. She maintains that she will lose the extensive time she has invested in preparation, will suffer a serious setback in her efforts to practice her chosen profession, will face the prospect of taking and preparing for the exam a third time, and will suffer the professional stigma of failure because of her medical disability.

The Board argues that plaintiff will not suffer any injury because they have granted virtually all the accommodations sought by her, plus several others she has not requested, e.g., an amanuensis and a taped examination. In addition, the Board contends that in light of the fact that plaintiff was able to finish her July exam in the time allotted, any claim of injury is remote and speculative. Further, assuming that plaintiff does not pass the February exam, the Board maintains that plaintiff's inability to be admitted to practice law involves issues relating to employment and the ability to secure income, which are not the sort of harm to be remedied by issuance of an injunction.

 While plaintiff's injury is related to her ability to be admitted to practice law

and secure legal employment and income, it goes well beyond these monetary considerations. Plaintiff's injury is the result of ongoing discrimination based on her medical disability. The issuance of injunctive relief is appropriate when a disabled person loses the chance to engage in a normal life activity. *Anderson v. Little League Baseball, Inc.*, 794 F.Supp. 342, 345 (D.Ariz. 1992). *See also Chalk v. United States District Court Central District of California*, 840 F.2d 701, 710 (9th Cir.1988).

But for plaintiff's disability and the Board's reluctance to allow her to take the exam over a four day period, she would have an equal opportunity to be admitted to the practice of law. I find that plaintiff has shown the presence of irreparable harm.

## II. Sufficient Likelihood of Success on the Merits

Plaintiff moves for an injunction pursuant to §§ 12189 and 12132 of the ADA. She argues that she is disabled and that in order for the February exam to be accessible to her, the Board must provide the accommodations set forth in the letter and affidavit of her ophthalmologist, Dr. Hobart A. Lerner. Dr. Lerner specifically recommended that plaintiff be given four days to complete the exam, with appropriate rest periods, because "the longer the exam is on a given day, the less likely [plaintiff] will adequately perform." Lerner Aff. ¶ 12. In response to the Board's proposed schedule of unlimited time during the two scheduled days, Dr. Lerner stated that: "With her condition of acute ocular fatigue, the proposed schedule does not provide [plaintiff] with a fair and equal opportunity to perform." Lerner Aff. ¶ 12.

The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101.

A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A). A

covered entity discriminates against a disabled individual when it fails to make "reasonable accommodations to known physical or mental limitations ..." 42 U.S.C. § 12112(b)(5)(A).

Section 12132 states in part:

[N]o qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity ...

Section 12189 states in part:

Any person that offers examinations or courses shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

The term "person" is defined as having the same meaning given the term in § 701 of the Civil Rights Act of 1964. 42 U.S.C. § 12111(7). In that Act, person is defined as including governments and governmental agencies. 42 U.S.C. § 2000e(a).

Therefore, to succeed on a claim under the ADA, plaintiff must show (1) that she is disabled, (2) that her requests for accommodations are reasonable, and (3) that those requests have been denied. The Board has conceded that plaintiff is disabled and it is apparent that all of her requested accommodations have not been met.

█ There is no doubt in this case that the Board did make some accommodations for plaintiff. They are not insubstantial. The ADA, however, requires the Board to make "reasonable accommodations" under the circumstances in light of plaintiff's disability. An individual analysis must be made with every request for accommodations and the determination of reasonableness must be made on a case by case basis.

█ There is a delicate balance that must be made in determining the reasonableness of a given request especially when it relates to examinations and testing procedures. The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged. In this case, plaintiff claims that because of her visual impairment, she will be severely disadvantaged in taking the February exam unless she is provided with the accommodations recommended by her treating physician. In considering these issues, the Court recognizes that the ADA was not meant to give the disabled advantages over other applicants. The purpose of the ADA is to place those with disabilities on an equal footing and not to give them an unfair advantage.

█ This concern about giving plaintiff an "advantage" seems to be at the heart of the Board's opposition to the requested accommodation. The Board is concerned with security issues involving the integrity of the test, but those issues can be addressed and the Board's counsel conceded at the hearing that this was not the primary issue. The Board has made a judgment that this applicant should be able to take the test during the scheduled two days because the Board has authorized her to take as much time as necessary to complete the exam during those two days. Essentially the Board believes that plaintiff would have an unfair advantage over other applicants by taking the exam over four days. The Board, in a nutshell, believes that it has made reasonable accommodations and that its decision as to what is "reasonable" controls and is not dictated by the recommendation of plaintiff's treating physician.

In my view, the Board does not have the final say as to what constitutes a reasonable accommodation. If the parties cannot resolve the matter, this Court must determine, in light of all facts and circumstances, whether the accommodations provided by the Board are reasonable under the circumstances.

In my judgment, the most important fact that the Court must consider in determining the reasonableness of the Board's accommodations is the nature and extent of plaintiff's disability. There is no question in this case that plaintiff does have a serious visual disability. She has been under the care of an eminent ophthalmologist since 1972 and the record is replete with documentation of her disability.

Dr. Lerner's affidavit describes the course of treatment and the various accommodations that have been made for plaintiff while she attended Cornell University and the State University of New York Law School at Buffalo. In both institutions plaintiff was afforded additional time as well as other accommodations to complete her examinations.

Dr. Lerner recommended in an affidavit submitted in this case that based on plaintiff's medical condition, she should take the February exam over a four-day period, with testing limited to five hours per day with fifteen minute breaks every hour, if needed, and a break for lunch.

The Board obviously concurred with Dr. Lerner that plaintiff was entitled to additional time to take the examination because it was willing to give her *unlimited* time on the two exam days. Therefore, the fact that plaintiff needs more time is not challenged.

Although the Board obviously accepted Dr. Lerner's medical opinion that plaintiff needs additional time to take the exam, it rejected his medical opinion that lengthy test days, involving long periods of reading, exacerbates her condition. Without addressing Dr. Lerner's medical opinions, the Board, by fiat, determined that plaintiff's request was unreasonable and not required.

Because I disagree with the Board's analysis of this problem, I must reject its conclusion and grant the requested preliminary injunction, requiring the Board to provide plaintiff with the accommodations recommended by her treating physician.

The Board's position was made quite clear at the hearing. The Board's position is that ultimately this dispute involves a "testing" issue and that the Board's expertise in that area should take precedence over Dr. Lerner's medical opinion. I disagree. I view this principally as a medical issue and that therefore the opinion of the applicant's treating physician must be given great weight. The Board has no expertise concerning plaintiff's medical condition and, in my view, the Board is in no position to countermand plaintiff's treating physi-

cian's opinion as to what is the appropriate accommodation for her visual disability.

Dr. Lerner, who has been plaintiff's treating physician for over 20 years, has impeccable credentials. Dr. Lerner is a clinical professor of ophthalmology at the University of Rochester School of Medicine and the Department of Ophthalmology at the University of Rochester. He is an attending surgeon at the Strong Memorial Hospital in Rochester, New York, Chief Emeritus of the Division of Ophthalmology at Genesee Hospital in Rochester, New York, Past Chairman of the Section of Ophthalmology of the Medical Society of the State of New York, Past President of the New York State Ophthalmological Society, a Diplomate in the American Board of Ophthalmology and a Fellow with the American College of Surgeons.

Dr. Lerner's present opinion is that plaintiff's visual problems require that the test be conducted over 4 days with only 5 hours of testing per day. He found that the exam schedule given plaintiff in July, which allowed her more time on each exam day, from 7:30 a.m. to 5:45 p.m. "exacerbated her visual impairment." In his view, additional time on a particular exam day does not correct plaintiff's problems.

Dr. Lerner described plaintiff's condition in some detail:

> Long periods of sustained reading are impossible for [plaintiff]. After she has read continuously for a period of approximately 45 minutes, she develops a blurring, tearing and burning in her eyes and suffers from an acute form of ocular fatigue. She cannot "skim" material and her disability requires her to read slowly and deliberately. This condition clearly affects her ability to read at a normal rate. In order to demonstrate her abilities on an equal basis, she must be afforded rest time throughout a period of continuous reading.

Lerner Aff., ¶ 7.

Dr. Lerner communicated that recommendation to the Board in December 1992 in connection with plaintiff's petition to the Board for accommodations.

Except for Dr. Lerner's medical opinion, there is no other medical evidence for the Court to consider. The Board does not challenge Dr. Lerner's qualifications and they have taken no steps to rebut or contradict Dr. Lerner's medical opinion concerning the nature of plaintiff's disability and his opinion concerning her abilities to use her eyes during a lengthy examination such as the bar exam. His medical opinions and diagnoses are unchallenged.

The Board's position, which I have difficulty comprehending, is that Dr. Lerner is not "qualified" to recommend a four day examination, as opposed to the two day schedule mandated by the Board. In my judgment, however, the opinion and diagnosis of Dr. Lerner is precisely the kind of medical opinion that physicians give all the time concerning the ability of their patients to perform activities. It would be ludicrous if the physician was limited to simply describing the patient's medical· condition without stating an opinion about the patient's ability to perform certain physical or mental tasks that are affected by the disability.

Dr. Lerner states that the unlimited time suggested by the Board is not beneficial to plaintiff and "exacerbates" her condition. The Board, without any medical opinion to support its conclusion, chooses to ignore the treating physician's recommendation and refuses to allow plaintiff to take the test over the four-day period. Under these facts, I fail to see what is so sacrosanct about a two-day test. Under the particular circumstances of this case, the Board's decision is contrary to the letter and the spirit of the ADA and cannot stand. 42 U.S.C. § 12101(b).

It is true that the treating physician does not have the final word on determining what is or is not reasonable. But in a case where there is no medical evidence to the contrary, and the treating physician's opinion does not appear on its face to be outrageous, it is appropriate for the Court to give great weight to the physician's opin-

ions as to the nature of the accommodations required for his patient.

I recognize that the Board has an obligation to maintain the integrity of the examination process. Plaintiff has indicated her willingness to comply with any reasonable security requirements required by the Board. This would not seem to be an insurmountable problem and the Board does not contend that it is so.

These are not easy issues, and I am sure that the Board intended no ill will toward plaintiff, but I believe the Board must understand that they may not always be in the best position to determine what is a reasonable accommodation for an applicant who has a disability that can only be diagnosed and treated by a physician with significant experience and expertise. The Board's opinion as to what is "reasonable" for a particular applicant can be given very little weight when the Board has no knowledge of the disability or disease, no expertise in its treatment, and no ability to make determinations about the physical capabilities of one afflicted with the disability or disease. This Court, must rely on the integrity of the treating physician. Absent any evidence that such information should be discounted, this Court must look to the treating physician to determine the appropriate accommodation for one with a disability. The Board chose not to challenge the medical evidence offered to support plaintiff's request but relied instead on its own so-called "expertise" in the field of "testing" to dictate what they believe was "right" for plaintiff. On this record, such a decision was unwarranted and ill-advised and cannot withstand scrutiny under the ADA.

## CONCLUSION

Plaintiff's motion for a preliminary injunction is granted. The Board must comply with the accommodations requested by her doctor. Specifically, the Board must provide plaintiff with all the accommodations that it agreed to provide for the February exam and, in addition, the Board must provide a four-day testing schedule

consisting of six hours of testing per day plus a one hour lunch break each day.[2]

IT IS SO ORDERED.

---

2. The six hour schedule should be sufficient to provide plaintiff with time for short breaks to rest her eyes. This is consistent with Dr. Lerner's recommendation that the test day consist of five hours of testing with fifteen minute breaks each hour. With a six hour test period, plaintiff should have sufficient time to rest when she believes it is necessary to do so.