Steven MACZACZYJ, Plaintiff,

v.

STATE OF NEW YORK and Anne Bert-holf, Individually and as the Center Director–Associate Dean of Empire State College of the State University of New York, Defendants.

No. 96–CV–0823C(F).

United States District Court, W.D. New York.

Feb. 21, 1997.

Falk & Siemer, LLP (Stephen F. Szymoniak, of counsel), Buffalo, NY, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (William D. Lonergan,

Assistant Attorney General, of counsel), Buffalo, NY, for Defendants.

## BACKGROUND

CURTIN, District Judge.

Plaintiff brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the New York Human Rights Law, N.Y.Exec. L. § 290, *et seq.*, claiming that defendant denied plaintiff admission into the Masters of Arts in Liberal Studies program ("masters program") at the Empire State College of the State University of New York ("Empire State College") on the basis of his disability and that defendants have willfully and unlawfully denied reasonable accommodation. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and litigation expenses (Item 1).

On February 10, 1997, plaintiff moved for an order granting him leave to amend his complaint and for an order granting him a preliminary injunction (Item 5). Specifically, plaintiff, a resident of Jamestown, New York, alleges that although he has been accepted into the masters program at Empire State College for the February term, school administrators have demanded that he attend a residency program on February 22, 1997, in Buffalo without providing him with a feasible reasonable accommodation.[1] Plaintiff contends that due to his mental illness he is unable to personally attend this program. He asserts that he would be able to participate in the program over the telephone and has requested that the college provide such accommodation. Plaintiff contends that if his request for a reasonable accommodation is not granted, he will be denied admission into the February term of the masters program which begins on Saturday, February 22, 1997, and will thereby suffer economic loss as well as immediate and irreparable emotional injury. Thus, plaintiff seeks to amend his complaint to add a cause of action based on the denial of his request for a reasonable accommodation and a preliminary injunction preventing defendants from rejecting the reasonable accommodation requested by plaintiff to appear at the residency program by telephone and requiring defendants to give plaintiff credit for his appearance by telephone.

In chambers, the parties agreed that they would first handle plaintiff's request for a preliminary injunction and return to the question of whether plaintiff should be allowed to amend his complaint following the court's decision. Thus, the court does not address the merits of plaintiff's request to amend his complaint in this order.

## FACTS

Plaintiff alleges that has suffered from severe panic attacks since September 13, 1989. He has been treated at both the W.C.A. Hospital and the Chautauqua County Mental Health Center, both in Jamestown, New York, for panic disorder. At one time in 1993 plaintiff was diagnosed as suffering from anxiety disorder, social phobia, and panic attacks (Item 6, Exhibit C). Marshall Greenstein, a mental health therapist at the Chautauqua County Mental Health Clinic who has treated plaintiff's disability since 1993, explains that plaintiff has a great deal of difficulty dealing with public places and that he suffers from severe panic attacks and emotional trauma whenever he is forced to interact with the public in general (Item 7, ¶ 3). Because he is a former drug addict and alcoholic, plaintiff resists taking medications whenever possible. However, he does take medication in the form of Xanax p.r.n. when he faces unavoidable anxiety-provoking pro-

---

1. Although plaintiff consistently refers to this program as an orientation, defendant contends that it is a residency. According to school administration, residencies are a required part of the Masters of Arts in Liberal Studies degree program and constitute a compression of class meetings into two weekends. The residencies provide intensive academic seminars, group discussion, intellectual interchange among students from diverse cultural and professional backgrounds, interactive analysis of students' per-

spectives on assigned readings, and efficient contact between students and professors. The activities in the residency give students an opportunity to demonstrate, and for faculty to assess, student abilities to employ critical thinking, analysis, and mastery of course content (Item 10, ¶¶ 4–8). Although portions of the program are designated as student orientation, the February 22, 1997 program is not merely an orientation.

cedures, such as dental work (*Id.*, ¶ 2). When plaintiff experiences a panic attack, it is impossible for him to think about anything else, he becomes completely agitated, his heartbeat races, he sweats profusely, and he feels as though the walls are caving in on him (*Id.*, ¶ 5). Because plaintiff is 5′7″ and weighs approximately 245 pounds, the panic attacks have potentially life-threatening ramifications as the increase in his heart rate dramatically increases the possibility that plaintiff will suffer a heart attack (*Id.*, ¶ 4).

Since the onset of his illness, plaintiff has not traveled to the City of Buffalo. He avoids crowds and public places at all costs (Item 6, ¶ 17). He is virtually housebound and relies on others for most of his daily needs. He communicates with individuals by telephone and has access to the Internet through a home computer.

Despite his disability, plaintiff obtained a Bachelor of Arts Degree in Anthropology through Empire State College's distance learning program. Plaintiff was never required to attend any programs or classes at an Empire State College campus in pursuit of his undergraduate degree. Plaintiff completed the requirements for his undergraduate degree on October 10, 1996, and was awarded his degree in December 1996 (Item 9, Exhibit A).

In July 1996, plaintiff applied for admission into the Masters of Arts in Liberal Studies program at Empire State College. His application was forwarded to the office of defendant Dr. Anne Bertholf, who in turn forwarded the application to the faculty review committee. On September 4, 1996, the faculty review committee informed Dr. Bertholf that they had conditionally approved plaintiff's application; the condition being that he complete his undergraduate studies prior to the commencement of the graduate program's semester course of study. On September 4, 1996, plaintiff spoke with Terry MacWhinnie, Dr. Bertholf's secretary, who advised him of his conditional acceptance and the nature of the condition. In a subsequent telephone conversation with Dr. Bertholf, plaintiff learned that the admissions office would accept verbal confirmation from plaintiff's local mentor that he had completed his undergraduate studies. Because plaintiff did not complete his undergraduate studies until October 10, 1996, he was not eligible to participate in the Fall 1996 semester of the masters program. On January 14, 1997, the college advised plaintiff that having completed his undergraduate course of study, he was eligible to participate in the Spring 1997 semester of the masters program.

At some time in September 1996, plaintiff advised Dr. Bertholf that he would not be able to attend the required residency program due to his disability. This was the first time plaintiff indicated that his disability would prevent him from personally attending any required programs. Plaintiff asked Dr. Bertholf whether he could attend the program via satellite uplink. Dr. Bertholf informed plaintiff that she would have to consult with other administrative and academic representatives of the college in order to assess whether plaintiff's request was a reasonable accommodation to the program. On September 26, 1996, Dr. Bertholf wrote to plaintiff asking him to submit his request for accommodation in writing and to provide her with proof of his disability (Item 6, ¶ 12 and Exhibit E). Plaintiff complied with these requests by letter dated October 1, 1996. Before defendants were able to contact plaintiff to discuss possible accommodation with respect to the residency requirement, plaintiff filed this lawsuit.

On or about January 21, 1997, school administrators offered to accommodate plaintiff's disability by having him attend the program under certain modified circumstances. Plaintiff would (1) be able to be accompanied by a friend or advisor of his choice, (2) have access to a vacant room to which he could retreat whenever the need were to arise, (3) be excused from those portions of the residency which were deemed predominantly of a social nature (i.e., lunch period and coffee break periods), and (4) have his choice of location within the meeting area where the residency is to be conducted (Item 6, ¶ 15, Item 8, p. 6). On or about January 22, 1997, plaintiff rejected this accommodation based on his belief that it is neither reasonable nor feasible given his belief that it is absolutely impossible for him to attend the program.

In support of his contention that this accommodation is not feasible, plaintiff's mental health therapist, Mr. Greenstein, asserts that the quantities of medication required to make the residency tolerable for plaintiff would be so disorienting as to render attendance meaningless (Item 15, ¶ 5). Plaintiff then requested that he be permitted to attend the program by telephone and that the call be initiated by the college (Item 6, ¶ 16).

Administration officials at Empire State College explain that programs delivered through telecommunications as distance learning programs require a deliberate design and pedagogy distinctly different from that of a program designed for face to face interaction between teacher and students (Item 9, ¶ 4). In addition, a college that wishes to convert a program with essential personal attendance requirements to a telecommunications distance learning format must seek approval from the State Education Department (Id., ¶ 3). The masters program at Empire State College is neither designed nor registered for complete distance delivery (Id., ¶ 5). Mandatory residency attendance is a core requirement of the masters program as the residencies are a required component of three core courses, totaling 12 credits (Item 10, ¶ 4). During each residency, the students engage in intensive academic seminars, group discussions, presentations, intensive analyses of their personal perspectives on assigned readings, and critiques of each other's contributions. These activities give students an opportunity to demonstrate, and for faculty to assess, student abilities to employ critical thinking, to analyze and comprehend the course content, and to effectively critique their classmates' work (Id., ¶ 8).

Administration officials contend that residency participation via telephone conferencing is not academically equivalent to participation through physical presence (Id., ¶ 10). Although telephone conferencing is effective for the exchange of information, the objectives of the residencies are not limited to the exchange of information. The main objectives of the residencies are to develop the critical and analytical thinking skills of students at the graduate level and to prepare students to display such skills in a variety of modes of communication. Empire State College administration assert that telephone conferencing offers an attenuated form of interpersonal interaction, devoid of nonverbal cues that amplify the verbal messages of the speakers and that supply feedback from others about the impact of the speaker's statements (Id., ¶ 11). If plaintiff were allowed to participate by telephone, the faculty would not be able to assess his academic performance in an accurate manner, as they would not be able to differentiate shortcomings in his ability to analyze and contribute in class discussion and debate from shortcomings in the technology which transmits only a small fraction of oral communication (Id.). In addition, administration officials also contend that having one student participate via telephone would impose a burden on the other students whose ability to debate and critique plaintiff's contributions would be limited due to the attenuated nature of telephone communication (Id., ¶ 12). Students working with plaintiff in small groups would be limited in their ability to develop rapport and an effective working relationship.

It appears as if Empire State college has never allowed any student to waive any residency requirement for any of its graduate degree programs (Item 9, ¶ 10, Item 10, ¶ 9).

Mr. Greenstein has indicated that based upon the severity of plaintiff's condition, the recent setback he suffered as a result of being denied admission for the Fall 1996 semester of the masters program, and the debilitating effect of this entire ordeal on his mental recovery, plaintiff will not within one year recover to such a point where he could attend a residency program (Item 15, ¶ 7).

On Thursday, February 20, 1997, the court held a hearing on plaintiff's application for a preliminary injunction. The court derives from the affidavits submitted by plaintiff that he is disabled and not able to travel to Buffalo because of his mental and physical condition. At the hearing, plaintiff relied upon affidavits and did not offer any testimony. Dr. Anne Bertholf, Dr. Marjorie Lavin, and Dr. Dennis DeLong, all associated with the directing of the Empire State Program for Graduate Studies, testified at the hearing. Their testimony supported the written affida-

vits which have been supplied by defendants. Specifically, they emphasized that attendance at the residency program is an essential part of the masters program, and the college cannot accommodate plaintiff by permitting him to participate by telephone.

### DISCUSSION

In order for this court to grant plaintiff's motion for a preliminary injunction, plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979)). The Second Circuit has instructed that

> [w]here ... the grant of the preliminary injunction will give the movant essentially all the relief he seeks, the injunction is often deemed mandatory rather than prohibitory, and a somewhat higher standard is applied, under which the movant must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success.

*Johnson v. Kay,* 860 F.2d 529, 540 (2d Cir. 1988) (emphasis in the original) (citing *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025–26 (2d Cir.1985)).

■ Title II of the ADA prohibits discrimination by public entities and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The protections afforded by the ADA ensure that with or without reasonable accommodations of programs and services, a disabled individual who meets the essential eligibility requirements to participate in the program or receive the benefit in question is not discriminated against by reason of the disability. *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1037 (S.D.N.Y.1995). In the present action, the parties do not dispute that plaintiff suffers from a severe disability, nor is there any real dispute that defendants are governed by the provisions of the ADA. Empire State College accepted plaintiff into the masters program once he completed his undergraduate studies; therefore, it is clear that plaintiff met the essential eligibility requirements to participate in the program. In addition, there is no question that plaintiff requested and has been denied certain accommodations which would allow him to participate in the masters program.

■ In order to demonstrate that he will experience irreparable injury, plaintiff must show that a monetary award will not adequately compensate him for his injuries. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75 (2d Cir.1990); *Jackson Dairy,* 596 F.2d at 72. Plaintiff claims that if this court declines to grant his motion for a preliminary injunction, he will not be able to complete a required component of three core courses in the masters program, and consequently he will not be able to satisfy the requirements for a masters degree. Plaintiff claims that this dismissal from the graduate program will cause him to suffer immediate and irreparable harm. In addition to preventing him from furthering his education and increasing his ability to market his talents and skills, the denial of his requested accommodation is causing him additional anxiety and is resulting in a severe set-back in his progress in overcoming his illness (Item 6, ¶ 20).

In support of his claim that he will suffer irreparable injury, plaintiff argues that the instant case is virtually identical to *D'Amico v. New York State Board of Law Examiners,* 813 F.Supp. 217 (W.D.N.Y.1993) (Larimer, J.). The plaintiff in *D'Amico* suffered from a severe visual disability and experienced extreme difficulties reading. She graduated from the State University of New York at Buffalo School of Law in 1992 and registered for the July Bar Exam. Although she was provided with a large print exam, was permitted to bring her own lamp and a straight edge, was furnished with a semi-private room in which to take the exam, and was allowed four extra hours to complete the exam on each day, she failed the July 1992 exam. When she registered for the February 1993

exam, the plaintiff requested that she be allowed four days to complete the exam. When the defendant refused this request, the litigation ensued. In finding that the plaintiff had demonstrated that she would suffer irreparable injury in the absence of injunctive relief, Judge Larimer recognized that although the plaintiff's injuries were related to her ability to be admitted to practice law and secure legal employment, her injuries went well beyond monetary considerations. *D'Amico*, 813 F.Supp. at 220. Judge Larimer held that the plaintiff's injury was the result of ongoing discrimination based on her medical disability and held that injunctive relief is appropriate when a disabled person loses the chance to engage in a normal life activity. He concluded by noting that but for her disability and the Board's reluctance to allow her to take the exam over a four day period, the plaintiff would have an equal opportunity to be admitted to the practice of law. *Id.*

Defendants in the present action counter plaintiff's argument by asserting that since courts have found that denial of admission to a graduate program fails to demonstrate an irreparable injury, mandatory attendance to an essential academic activity subsequent to admission clearly fails to demonstrate irreparable injury (Item 8, p. 4). In support of this argument, defendants cite *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981) and *Betts v. Rector & Visitors of the University of Virginia*, 939 F.Supp. 461 (W.D.Va.1996). Despite defendants' claims to the contrary, neither of the cases they cite stands for the proposition that denial of admission to a graduate program fails to demonstrate irreparable injury. Although the court in each case denied each plaintiff's motion for a preliminary injunction, the rationale for each decision turned on the specific facts of the case rather than the broad generalization defendants suggest. Finally, in their papers opposing plaintiff's motion, defendants fail to address the applicability of *D'Amico* to the present case.

■ Although the court is not convinced that the *D'Amico* case is virtually identical to the present case, the court finds that plaintiff has sufficiently demonstrated that in the absence of injunctive relief he will suffer an injury which cannot be compensated through monetary relief. In the absence of an injunction, plaintiff will not be able to participate in this or any other masters program at Empire State College. This exclusion will most likely affect plaintiff's ability to engage in the future employment of his choice. Perhaps more important is the unquantifiable effect this exclusion will have on plaintiff's mental illness. Both Mr. Greenstein and plaintiff have indicated that this experience has already had a significant negative impact on plaintiff's mental health and his progress towards overcoming his illness. If the court denies injunctive relief and plaintiff is released from the masters program, plaintiff is likely to suffer additional psychic harm.

■ Defendants correctly note that educational institutions are not required to "lower or effect substantial modifications of standards to accommodate a handicapped person." *McGregor v. Louisiana State University Board of Supervisors*, 3 F.3d 850, 858 (5th Cir.1993), *cert. denied*, 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370–71, 60 L.Ed.2d 980 (1979)). The Supreme Court has repeatedly instructed that although applicable educational institutions are required to make reasonable modifications in the nature of their programs to accommodate the handicapped, they are not required to make fundamental or substantial modifications. *Davis*, 442 U.S. at 410–13, 99 S.Ct. at 2369–71; *Alexander v. Choate*, 469 U.S. 287, 300–01, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661. In order to satisfy the second prong of the preliminary injunction test, plaintiff must prove a substantial likelihood of success on the merits. *Blum*, 18 F.3d at 1010; *Johnson*, 860 F.2d at 540. Given that there is no genuine dispute over the question that plaintiff is disabled, that his disability would prevent him from physically attending the residency, or that defendants are covered under the provisions of the ADA, the only remaining issue in dispute is whether plaintiff's requested accommodation to attend the residency via speaker telephone is reasonable or would constitute a

fundamental modification or substantial modification of the program.

Plaintiff argues that the court must determine whether a reasonable accommodation could allow a handicapped person to receive the program's essential benefits. *Easley v. Snider,* 36 F.3d 297 (3rd Cir.1994). Plaintiff asserts that participating in the residency program via telephone would not deprive the program of its essential benefit, namely education (Item 13, p. 3). He contends that the itinerary and pre-residency assignment fails to support defendants' claims regarding the pedagogical necessity of physical presence at the residency (*Id.,* p. 4). Plaintiff cautions that in determining whether an accommodation would allow the applicant to receive the benefit, the court should not rely solely on the stated benefits "because programs may attempt to define the benefit in a way that 'effectively denies otherwise handicapped individuals the meaningful access to which they are entitled.'" *Easley,* 36 F.3d at 302 (quoting *Alexander,* 469 U.S. at 301, 105 S.Ct. at 720). He argues that he would be able to read the assigned materials prior to the residency and participate fully by telephone and this involvement would satisfy his goal of acquiring knowledge and improving himself.

Defendants submit that excluding plaintiff's personal attendance from the residency requirement would result in lowering the academic standards and imposing a substantial modification of the program which would devalue the school's end product which would in turn substantially alter the academic program (Item 8, p. 7). As discussed more thoroughly above, administration officials of Empire State College argue that the residency program is designed to provide the students with intensive academic interaction with each other and with the faculty through which they are to develop their critical thinking and communication skills. Defendants contend that allowing an individual to participate over the phone would not only interfere with that individual's educational experience, it would also interfere with the educational experience of the students in the classroom. ■ The court finds defendants' arguments regarding the pedagogical purposes of the residency program to be persuasive.

The record demonstrates that despite their continued insistence that plaintiff attend the residency, the administrators at Empire State College have made efforts to accommodate plaintiff's disability. It is the severe nature of plaintiff's handicap rather than the defendants' failure to offer reasonable accommodation that is limiting plaintiff's ability to achieve his educational objectives. The affidavits submitted by defendants demonstrate that administrators at Empire State College designed the residency program to achieve definite pedagogical objectives. The court does not wish to substitute its judgment for that of experienced education administrators and professionals in assessing whether the program does in fact meet its pedagogical objectives.

Based on the record, the court finds that allowing plaintiff to participate in the residency program would be a substantial modification of the educational program. As such, under the circumstances plaintiff's requested accommodation is unreasonable. Since he has not demonstrated a substantial likelihood of success on the merits, the court rejects plaintiff's motion for a preliminary injunction.

Finding that no good purpose would be served by delaying final judgment since the program begins on Saturday, February 22, 1997, the court will consolidate the application for a preliminary injunction with the application for a permanent injunction under Rule 65(a)(2) of the Federal Rules of Civil Procedure.

### *CONCLUSION*

For the foregoing reasons, the court denies plaintiff's motion for a preliminary injunction under Fed.R.Civ.P. 65(a). The Clerk is directed to enter judgment accordingly.

So ordered.