OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

September 12, 2002

Ms. Cathy L. Hendricks                           Opinion No. JC-0555
Executive Director
Texas Board of Architectural Examiners           Re:  Confidentiality of disability information
333 Guadalupe, Suite 2-350                       collected by the Texas Board of Architectural
Austin, Texas 78701-3942                         Examiners, and related questions  (RQ-0529-JC)

Dear Ms. Hendricks:

The Texas Board of Architectural Examiners ("the Board") asks about its duty or authority to maintain the confidentiality of medical information about disabled candidates for registration who request accommodations for the registration exam.[1] The Board recognizes that the requirements of the Texas Public Information Act, chapter 552 of the Government Code, will apply to requests for such information, even if the information is confidential by statute and ultimately must be withheld from public disclosure. It seeks this opinion to determine whether it should reconsider the information it asks such candidates to submit as evidence of their need for accommodations. *See* Hendricks Brief, *supra* note 1, at 5.

The Board administers the statutes governing the registration of architects, landscape architects, and interior designers. *See generally* TEX. OCC. CODE ANN. chs. 1051-1053 (Vernon 2002). Applicants for registration in these areas must take a professional licensing exam. *See id.* §§ 1051.304, 1052.153, 1053.154. To comply with the federal Americans with Disabilities Act, *see* 42 U.S.C. §§ 12101-12213 (2000) (the "ADA"), the Board arranges for accommodations for examinees with disabilities, requiring each examinee who has requested accommodation to submit evidence of disability. *See generally* Tex. Att'y Gen. Op. No. JC-0050 (1999) at 4-5 (authority of licensing board to require examinee to provide documentation of disability and need for accommodations).[2] For this purpose, the Board uses a disability assessment form consisting of questions to be answered by "an appropriate licensed health care professional."[3]

---

[1]*See* Letter Brief from Cathy L. Hendricks, Executive Director, Texas Board of Architectural Examiners, to Honorable John Cornyn, Texas Attorney General (Apr. 3, 2002) (on file with Opinion Committee) [hereinafter Hendricks Brief].

[2]You do not ask whether Human Resources Code sections 121.010 and 121.011, which relate to testing individuals with disabilities, apply to the Board. *See* TEX. HUM. RES. CODE ANN. §§ 121.010-.011 (Vernon 2001).

[3]*See* TEX. BD. OF ARCHITECTURAL EXAM'RS, DISABILITY ASSESSMENT FORM, *attached to* Hendricks Brief, *supra* note 1, *also available at* http://www.tbae.state.tx.us/HOME/testaccommodations.pdf (last visited July 29, 2002)
(continued...)

You ask whether information that the Board receives on the disability assessment form is confidential under chapter 159 of the Texas Occupations Code, which governs physician-patient communications. *See* Hendricks Brief, *supra* note 1, at 4. Information about the identity, diagnosis, evaluation, or treatment of a patient provided to the Board by a physician is confidential under chapter 159 of the Occupations Code, and the Board may not disclose it except to the extent that disclosure is consistent with the authorized purposes for which it was obtained. *See* TEX. OCC. CODE ANN. § 159.002 (Vernon 2002). A disability assessment form may also include an examinee's answer to an optional question, and such information, provided directly to the Board by the examinee, is not confidential under chapter 159 of the Occupations Code and will be excepted from public disclosure under the Public Information Act only if another exception applies to it. You also ask "[w]hether the privacy provisions in title I of the ADA apply by analogy to information regarding examinees' medical histories and medical conditions obtained by the Board under title II and title III of the ADA." *See* Hendricks Brief, *supra* note 1, at 4. The privacy provisions in title I of the ADA do not apply to medical information obtained by the Board under title II and title III of the ADA.

Attorney General Opinion JC-0050 addressed the effect of the ADA on licensing examinations administered by the Texas Board of Professional Engineers. We quote from the overview of the ADA provided by this opinion:

> Title I of the ADA prohibits employment discrimination on the basis of disability, *see* [42 U.S.C.] §§ 12111-12117; title II prohibits discrimination on the basis of disability by public entities, *see id.* §§ 12131-12165; and title III prohibits discrimination on the basis of disability in places of public accommodation, *see id.* §§ 12181-12189. The federal Equal Employment Opportunity Commission has promulgated rules enforcing title I of the ADA, *see* 29 C.F.R. pt. 1630 (1998), and the United States Department of Justice . . . has promulgated rules implementing titles II and III, *see* 28 C.F.R. pts. 35 (implementing title II, subchapter A) & 36 (1998), and has published extensive commentary to those rules, *see* 28 C.F.R. pt. 35, App. A to pt. 35 (1988) (Section-by-Section Analysis) . . . pt. 36, App. B. to pt. 36 (1998) (Section-by-Section Analysis and Response to Comments).

Tex. Att'y Gen. Op. No. JC-0050 (1999) at 1-2.

State agencies are subject to the ADA, in particular title II and regulations promulgated under title II. *See* 42 U.S.C. § 12132 (2000); 28 C.F.R. pt. 35 (2001). *See also* Tex. Att'y Gen. Op. No. JC-0050 (1999) at 2. In addition, title III provides in section 12189 that any person that offers professional licensing examinations must offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

---

[3](...continued)
[hereinafter Disability Assessment Form].

42 U.S.C. § 12189 (2000). This provision applies to public entities that administer examinations for licensing and credential purposes and to private entities that administer examinations used by public entities. *See Agranoff v. Law Sch. Admission Council, Inc.*, 97 F. Supp.2d 86 (D. Mass. 1999) (Law School Admissions Test [LSAT]); *Ware v. Wyoming Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1353 (D. Wyo. 1997), *aff'd*, 161 F.3d 19 (10th Cir. 1998) (bar examination); *D'Amico v. New York State Bd. of Law Exam'rs*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993) (bar examination). *See also* Tex. Att'y Gen. Op. No. JC-0050 (1999) at 2.

The Board itself administers the examination for licensing as a landscape architect and contracts with other entities to administer the examinations for licensing as an architect or interior designer. *See* Hendricks Brief, *supra* note 1, at 1. You state that the Board, as required by law, provides reasonable accommodations for disabled individuals taking these exams and requires the applicant to provide reasonable proof of disability. *See id. See also* 42 U.S.C. § 12189 (2000); 28 C.F.R. § 36.309(a),(b) (2001); Tex. Att'y Gen. Op. No. JC-0050 (1999). The Board's disability assessment form requires an appropriate licensed health care professional to describe the "specific diagnosis of the examinee's disability, its effect on major life activities, and the anticipated duration of the impairment"[;] to describe specific limitations on the examinee's ability to evaluate written material, to complete graphic sections of the examination, and to complete computerized sections of the examination; to provide information on whether the examinee's disability limits the amount of time the examinee can spend on specific examination tasks; and to describe how the disability can best be accommodated. *See* Disability Assessment Form, *supra* note 3. An optional question allows the health care professional and the examinee to provide additional information, and the form is signed by both persons. *See id.* at 2.

You ask whether the information recorded on the disability assessment form is confidential under section 159.002(b) of the Texas Occupations Code. *See* Request Letter, *supra* note 1, at 4. Section 159.002 of the Occupations Code provides as follows:

> (a) A communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided by this chapter.

> (b) *A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided by this chapter.*

> (c) A person who receives information from a confidential communication or record as described by this chapter, other than a person listed in Section 159.004 who is acting on the patient's behalf, may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.

. . . .

> (e) The privilege of confidentiality may be claimed by the patient or by the physician. . . .

TEX. OCC. CODE ANN. § 159.002 (Vernon 2002) (emphasis added).

Chapter 159 of the Occupations Code applies to patient records created or maintained by a physician, that is, a person licensed to practice medicine in Texas. *See id.* § 151.002(12). The Board's disability assessment form, however, is to be completed by "an appropriate licensed health care professional," a category that may include nonphysicians. *See, e.g.,* TEX. HEALTH & SAFETY CODE ANN. § 311.0025(d)(1) (Vernon 2001) (concerning audits of hospital billing and defining health care professional); TEX. OCC. CODE ANN. § 453.001(9) (Vernon 2002) (defining health care professionals who may refer a person for health care services). Because your brief indicates that the disability assessment form is generally completed by a physician, *see* Hendricks Brief, *supra* note 1, at 3, we limit our discussion accordingly. We note, however, that the patient communications and records of certain other health care professionals are confidential by statute. *See, e.g.,* TEX. HEALTH & SAFETY CODE ANN. § 611.002 (Vernon 1992) (mental health records within Health and Safety Code); TEX. OCC. CODE ANN. §§ 201.401-.405 (Vernon 2002) (chapter 201 subchapter I, chiropractors-patient confidentiality). The form also includes an optional question that the examinee may answer, and we will deal separately with information that the examinee provides to the Board in answering it.

If the Board receives "information from a confidential communication or record" as described by chapter 159 of the Occupations Code, it may not disclose the information "except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained." TEX. OCC. CODE ANN. § 159.002(c) (Vernon 2002). *See also* Tex. Att'y Gen. ORD-565 (1990) at 7 (overruled in part on issue unrelated to this opinion). The disability assessment form asks the physician to state the diagnosis of the examinee's disability and to evaluate its effects on the examinee from various perspectives. It is a record of "the identity, diagnosis, evaluation, or treatment" of the patient created by the physician. TEX. OCC. CODE ANN. § 159.002(b) (Vernon 2002). Such information is excepted from disclosure to the public under the Public Information Act, chapter 552 of the Government Code, and is subject to release only in accordance with chapter 159 of the Occupations Code. *See id.; see generally* Tex. Att'y Gen. ORD-565 (1990) at 7 (overruled in part on issue unrelated to this opinion). When the physician has completed a disability assessment form by answering the questions, the form will contain information that is confidential pursuant to section 159.002 of the Occupations Code, and the Board will not be authorized to disclose the information except as necessary to assess disabilities for purposes of providing accommodations at the examinations. *See* TEX. OCC. CODE ANN. § 159.002(c) (Vernon 2002).

The optional question allows the examinee as well as the physician to provide information concerning the examinee's disability and the accommodations he or she needs for the examination. Chapter 159 of the Occupations Code does not apply to information that the examinee provides

directly to the Board in answering the optional question. Information provided by the examinee will be excepted from public disclosure under the Public Information Act only if it is within an exception to the Act, which will depend on the specific item of information. *See generally Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976) (stating test for information that is private under Act). *See also* Tex. Att'y Gen. ORD-475 (1987), ORD-470 (1987) (overruled in part on issue unrelated to this opinion), ORD-455 (1987) (considering whether medical information about an individual or information indicating specific disabilities is protected from public disclosure by a constitutional or common-law right of privacy).

You also ask "[w]hether the privacy provisions in title I of the ADA apply by analogy to information regarding examinees' medical histories and medical conditions obtained by the Board under title II and title III of the ADA, thus requiring the Board to maintain this information in separate files and to treat such information as confidential medical records." Hendricks Brief, *supra* note 1, at 4. Title I prohibits discrimination in employment and limits the extent to which an employer subject to the ADA may require applicants and employees to provide information concerning disabilities. *See* 42 U.S.C. §§ 12101-12117 (2000). *See also* Tex. Att'y Gen. ORD-641 (1996) at 3. During the job application phase, an employer generally is prohibited from requiring an applicant to undergo a medical examination or to answer medical inquiries. *See* 42 U.S.C. § 12112(d)(2)(A) (2000); 29 C.F.R. pt. 1630 App. B, at 367 (2001). *See also* Tex. Att'y Gen. ORD-641 (1996) at 3. After a job offer is made, an employer may require an applicant to have a medical examination and may condition the job offer on the results of the examination. *See* 42 U.S.C. § 12112(d)(3) (2000). The employer may also collect from applicants information about medical condition or history after a job offer has been made. *Id.* "[M]edical condition or history" information collected on applicants after an employment offer is made and accepted must be "collected and maintained on separate forms and in separate medical files and . . . treated as a confidential medical record." *Id.* § 12112(d)(3)(B). *See also* 29 C.F.R. § 1630.14(b)(1) (2001) (providing that this information "shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record"). Information "regarding the medical condition or history of any employee" obtained as part of a work-site based health program also must be maintained on separate forms, in separate files, and be kept confidential. 42 U.S.C. § 12112(d)(4)(C) (2000). *See also* 29 C.F.R. § 1630.14(d)(1) (2001) (providing that this information "shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record").

Title I and the rules promulgated thereunder expressly provide that medical information collected on applicants and employees shall be maintained in separate medical files and shall be treated as confidential medical records. There are no comparable provisions in title II, title III, or the rules promulgated thereunder. *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 158 (3d Cir. 1999) (no provision of title III of the ADA explicitly requires confidentiality from providers of public accommodation, in contrast to title I, which requires employers to protect the confidentiality of employees with disabilities, with certain specific exceptions). We find no authority applying the confidentiality requirements of title I to title II or III of the ADA. It is a matter for the United States Congress or for the Department of Justice acting under rule-making authority to decide whether medical records obtained under titles II and III should be subject to federal confidentiality provisions.

Information you collect pursuant to title II or title III is not subject to the confidentiality requirements of title I. Accordingly, the Board must rely on state law as discussed in this opinion to protect applicants' medical information from disclosure to the public pursuant to a request under the Public Information Act.

## S U M M A R Y

Pursuant to the federal Americans with Disabilities Act, the Texas Board of Architectural Examiners considers prospective examinees' requests for special accommodations in the exams the Board requires for licensure as an architect, landscape architect, or interior designer. The Board uses a disability assessment form to determine whether an examinee who requests accommodations has a disability and the nature of accommodations needed as a result of disability.

Information about "the identity, diagnosis, evaluation, or treatment" of an applicant placed on a disability assessment form by his or her physician is confidential under chapter 159 of the Occupations Code and subject to release only under its provisions. *See* TEX. OCC. CODE ANN. § 159.002 (Vernon 2002). Such information is excepted from disclosure to the public under the Public Information Act, chapter 552 of the Government Code.

A disability assessment form may also include an examinee's or a non-physician's answer to an optional question, and such information, provided directly to the Board by the examinee, may be excepted from public disclosure under the Public Information Act if it is within an exception to that Act.

The privacy provisions in title I of the ADA do not apply to medical information obtained by the Board under title II and title III of the ADA. The Board must rely on state law to protect applicants' medical information from disclosure to the public pursuant to a request under the Public Information Act.

Very truly yours,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee