

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2007

# Benko v. Portage Area Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3457

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Benko v. Portage Area Sch" (2007). *2007 Decisions.* Paper 752.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/752

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3457
_____

JOHN CAMERON BENKO,

Appellant

v.

PORTAGE AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-00233J)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Under Third Circuit LAR 34.1(a)
May 18, 2007

Before:  FISHER and ROTH, *Circuit Judges*, and RAMBO,* *District Judge*.

(Filed: July 17, 2007)
_____

OPINION OF THE COURT
_____

*The Honorable Sylvia H. Rambo, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

RAMBO, *District Judge*.

John Cameron Benko appeals the District Court's grant of summary judgment in favor of Portage Area School District and against Benko. Benko argues that he set forth a *prima facie* case of disability discrimination in connection with Portage's refusal to provide certain retirement benefits. Benko further argues that he established a genuine issue of material fact that precludes summary judgment. For the reasons that follow, we disagree and will affirm.

I.

Because we write primarily for the parties who are familiar with the factual and legal background to this case, we will dispense with a lengthy recitation of the facts. At the outset, we note that in the District Court, Benko failed to file a response to the statement of material facts filed by Portage in accordance with the District Court's Local Rule of Court 56.1(B)(1). The District Court deemed Portage's statement of material facts to be admitted, pursuant to its Local Rule of Court 56.1(E), excluding only statements that it considered to be proposed conclusions of law. Such local rules are permissible so long as district courts do not use them to bypass the merits analysis required by Federal Rule of Civil Procedure 56. *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Since the District Court conducted a merits analysis, we will not disturb its decision to adopt Portage's statement of facts.

At the end of the 1996-1997 school year, Benko voluntarily retired after teaching at Portage for thirty-three (33) years. The Collective Bargaining Agreement that Benko

was subject to at the time of his retirement did not include an early retirement incentive. Before he retired, Benko sent a written request for a retirement incentive to the Portage School Board. Benko never received a response to this request, but asserts that Superintendent, Jerome Yetsko, verbally promised such an incentive or continuation of benefits, although the record provides no support for this assertion.

Prior to his retirement, Benko took a sabbatical for the 1994-1995 school year. His family physician, Dr. John Karduck, indicated that the sabbatical would be beneficial for "medical reasons" related to treatment for chest pain and degenerative lumbar disc disease. When Benko returned from the sabbatical in the beginning of the 1995 school year, he returned to the same position and schedule as before the sabbatical – he was the head of the Science Department and worked one half day teaching science to elementary students and one half day teaching high school students. Benko neither requested nor required any accommodations in connection with his physical condition. Although Benko stated at his deposition that his heart and back problems "slowed him down," he admitted that he could still perform his job functions.

Benko has also admitted that he does not currently receive treatment from a cardiac specialist, and does not receive regular treatment from any doctor for a heart or back condition. Similarly, none of the proffered medical records indicate ongoing treatment for these conditions.

3

Finally, Benko testified that he has a farm that serves as one of his current sources of income. The farm's crops include hay, oats, corn, honey, and apples. Benko works on the farm alone, without assistance.

None of the exhibits, affidavits, or depositions provided by Benko contradict any of the foregoing facts.

On October 6, 1997, Benko filed a claim with the Pennsylvania Human Rights Commission ("PHRC"), alleging age and disability discrimination. The claim was dually filed with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC forwarded Benko's request for a Notice of Right-to-Sue regarding the disability claim to the United States Department of Justice. On June 26, 2003, the PHRC dismissed Benko's complaint.

On October 17, 2003, Benko filed suit in the United States District Court for the Western District of Pennsylvania, asserting age discrimination pursuant to the Age Discrimination and Employment Act ("ADEA") and disability discrimination pursuant to the Americans with Disabilities Act ("ADA"). Portage filed a  motion to dismiss, and the District Court dismissed Benko's age discrimination claim. On June 18, 2006, the District Court granted Portage's motion for summary judgment on Benko's disability discrimination claim.

This timely appeal challenging the order granting Portage's motion for summary judgment on Benko's ADA claim followed.

II.

4

We have jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal from the final order of the District Court entering summary judgment for Portage. Our standard of review is plenary. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 317 (3d Cir. 2006). Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing the District Court's grant of summary judgment, we view the facts in a light most favorable to the non-moving party, Benko. *IFC Interconsult*, 438 F.3d at 317.

III.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the *McDonnell Douglas* burden shifting analysis,[1] to establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show: "(1) he is a disabled

---

[1]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (The *McDonnell Douglas* analytical framework applies to ADA claims.). *McDonnell Douglas* applies to the pretext theory of discrimination. 411 U.S. at 804; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Both the District Court's decision and Portage's brief discuss the mixed motive theory of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) and the effect of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) on the mixed motive theory. Because Benko's brief asserts arguments solely under *McDonnell Douglas*, we will not address issues relating to the mixed motive theory.

person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

Our first inquiry, therefore, is whether Benko is disabled within the context of the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Each of these elements depends in some respect upon the meaning of "substantially limits."

The parties agree that the EEOC regulations provide guidance in this regard. The regulations define "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The EEOC regulations further provide that the nature and severity, and duration or expected duration, of the impairment, as well as the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment, are relevant factors to this inquiry. *Id.* § 1630.2(j)(2). Finally, the regulations identify the following as major life activities: "functions such as caring for

6

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i).

Viewing the facts in the light most favorable to Benko, *IFC Interconsult*, 438 F.3d at 317, Benko has adduced sufficient evidence regarding problems connected with his heart and back to demonstrate an impairment. However, Benko fails to demonstrate a "substantially limiting" impairment. Benko asserts that he is substantially limited in bending, stooping, walking long distances, and other similarly taxing activities. During his deposition, Benko described himself as unable to perform "normal activities" as he had prior to experiencing heart and back problems. He further stated that the conditions "just slowed [him] down" when working outside on activities involving orchards, garden trails, and building a greenhouse. He also indicated that he had sought treatment for chest pain from Dr. Chauncey Smith at Loma Linda Hospital in California; Benko's brief characterizes this as treatment "on the national level" and an indication of the severity of his limitation. Benko also testified that he underwent physical therapy for his back in 1992 or 1993, although he could not recall specifics such as the facility or physician name, or the underlying cause of the problems prompting him to seek such treatment. Aside from Benko's deposition testimony and interrogatory responses, there are no medical records or other evidence in the record that provide any additional detail regarding such treatment.

Finally, two letters from Benko's family physician, Dr. Karduck, discuss his symptoms before and after the 1994-1995 sabbatical. In a June 8, 1994 letter, Dr.

7

Karduck recommended that Benko take a sabbatical for "medical reasons" and indicated that Benko was being treated for chest pain and degenerative lumbar disc disease. In a September 15, 1997 letter, Dr. Karduck stated that Benko had suffered from "intermittent chest pain" with "no definable cause." Dr. Karduck opined that "much of [Benko's] pain is related to stress and a reaction to the stress."

This evidence fails to provide a sufficient basis for finding that Benko has an impairment that substantially limits a major life activity. "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002). Moreover, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 197.

In *Toyota*, the Supreme Court held that changes such as "avoiding sweeping, [quitting] dancing, and [reducing time spent playing with children], garden[ing], and driv[ing] long distances. . . . did not amount to such severe restrictions in the activities that are of central importance to most people's lives that they establish[ed] a manual task disability as a matter of law." *Id.* at 202. Benko's asserted limitations – being "slowed down" and not being able to perform exactly as he had in the past with respect to bending, stooping, walking long distances, and other similarly taxing activities – likewise fail to rise to the level of a severe restriction. Moreover, the evidence that Benko returned to

8

work without accommodation and continues to work on his farm and raise various crops does not support a finding that Benko is substantially limited.

The evidence relating to Benko's medical treatment similarly fails to demonstrate a substantial limitation. At most, Dr. Karduck's letters merely provide a medical diagnosis, which is insufficient. *Id.* at 198. Individuals must "prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Id.* (internal quotation omitted). The fact that Benko visited Dr. Smith, without any additional detail, similarly fails to provide any information as to the extent of Benko's condition. The fact that Benko chose to travel some distance to see a particular physician neither demonstrates any specifics about his condition, nor indicates what that doctor's assessment of his condition might have been. In sum, Benko fails to demonstrate that he has a substantially limiting impairment within the meaning of the ADA.

The evidence here also fails to establish a record of a substantially limiting impairment. "A plaintiff attempting to prove the existence of a 'record' of a disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). Again, Benko has presented evidence only that he was unable to perform certain activities exactly as he had previously. There is no evidence, medical or otherwise, regarding the extent of the impairment. Accordingly, Benko has not demonstrated the existence of a record of disability.

Finally, Benko has not demonstrated that Portage regarded him as having a substantially limiting impairment. To satisfy the "regarded as" provision of the ADA's disability definition, a plaintiff must demonstrate that the employer either "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities," or "that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Thus, "a physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996) (internal quotation omitted). Moreover, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Id.* at 109.

Contrary to what Benko argues, neither Portage's willingness to grant Benko a sabbatical for health reasons nor its response to the State Farm Insurance Company's request for information in connection with Benko's independent disability claim establish anything more than Portage's awareness of Benko's impairment. Neither act conveys Portage's assessment or perception of Benko's condition. Moreover, Benko returned from the sabbatical and resumed his prior position without accommodation or restriction. Portage's conduct with respect to the sabbatical and claim request fail to demonstrate that Portage considered Benko's impairment to be substantially limiting.

10

In addition, Benko's allegation of "unfair and disparate treatment," presumably based on the summary of Portage's provision of retirement incentives from 1986 to 1997, is insufficient to demonstrate that Portage regarded Benko as disabled. No Collective Bargaining Agreement that was in place prior to or at the time of Benko's retirement contained any promise of retirement incentives; rather, the School Board independently determined whether such benefits would be extended to retirees in a given year, based on relevant financial considerations. None of the teachers who retired at the same time as Benko received a retirement incentive, nor were retirement incentives provided to all of the teachers who retired in previous years.[2] Benko's written request to the School Board for a "retirement package including continued hospitalization coverage," to which the School Board provided no response, does not alter this finding. If anything, it provides a further basis to conclude that the availability of retirement incentives depended upon a School Board vote, not on a Collective Bargaining Agreement. None of this evidence provides any insight into Portage's reasons for declining to offer a retirement incentive to Benko, nor does it establish that Portage regarded Benko as disabled.

Because Benko fails to demonstrate that he has an impairment that substantially limits a major life activity, a record of such an impairment, or that Portage regarded him as having such an impairment, he is not disabled for purposes of the ADA. 42 U.S.C. § 12102(2) ; 29 C.F.R. § 1630.2(g). Thus, Benko fails to establish a *prima facie* case of

---

[2]The record evidence provides no basis for assessing the health or physical status of the other retirees.

11

disability discrimination under the ADA. We do not need to consider the remaining steps of the *McDonnell Douglas* analysis.

In conclusion, we find that the District Court properly granted summary judgment for Portage because Benko is not disabled as defined by the ADA.[3] Therefore, we will affirm the order of the District Court.

---

[3]We also find that the District Court properly adopted Portage's statement of material facts, which were not contradicted by any evidence in the record; thus, no dispute of material fact exists.