No. 97,088

IN THE MATTER OF THE ESTATE OF ESTHER R. BRODERICK, DECEASED

(191 P.3d 284)

Opinion filed August 29, 2008.

*David P. Calvert,* of David P. Calvert, P.A., of Wichita, argued the cause and was on the brief for appellant Margaret R. Puls.

*Dan K. Wiley,* of Murray, Tillitson and Wiley, Chartered, of Leavenworth, argued the cause and was on the brief for appellee Estate of Esther R. Broderick.

The opinion of the court was delivered by

NUSS, J.: Margaret R. Puls appeals the trial court denial of her pro se motion for participation in her will contest trial by telephone. The court then conducted the trial in her absence and admitted the will to probate. Puls seeks reversal, remand, and telephonic participation in the retrial. Our jurisdiction arises from K.S.A. 20-3018(c) (a transfer from the Court of Appeals on this court's own motion).

The parties raise several issues on appeal, which we recast and answer as follows:

1. Did the trial court err in denying Puls' participation in the trial by telephone under the authority of Supreme Court Rule 145 (2005 Kan. Ct. R. Annot. 214)? No.

2. Did the trial court abuse it discretion in denying Puls' partici-
pation in the trial by telephone? Not necessary to address.
Accordingly, we affirm the trial court.

## FACTS

On August 26, 1993, Esther R. Broderick executed her will, be-
queathing her stocks and bonds to her three nephews, Geary E.
Ludwig, Jr., Dale W. Ludwig, and Gene R. Ludwig. The residuary
of her estate was bequeathed to those same three nephews and
two nieces, one of whom is Margaret R. Puls of Denver, the ap-
pellant. Geary was designated as executor, Dale as the successor
executor, and if necessary, then Gene.

Prior to Broderick's death on June 27, 2004, Geary had died and
Dale had become disabled. Gene Ludwig then filed a petition for
the admission of Broderick's will to probate and requested that he
be named executor of her estate. Ludwig's petition alleged Brod-
erick was of sound mind and not under any restraint when she
executed her will. A hearing on the petition was scheduled for
August 4, 2004.

The day before the hearing, Puls filed a pro se motion requesting
an additional 30 days to file written defenses. She opposed the
probate of the will on grounds that it was not duly executed, that
Broderick was mentally incompetent at the time she executed it,
and that Broderick was under the undue influence of a beneficiary.

The trial court ruled that Puls' pleading constituted a written
defense contesting the admission of Broderick's will to probate and
continued the hearing to September 20, 2004. The court also ap-
pointed Ludwig as special administrator until the hearing.

On September 20, Puls appeared for the hearing by telephone.
Ludwig's counsel argued that Broderick's will, which was filed with
the petition, established a prima facie case to prove capacity and
due execution because it met all of the statutory requirements of
a self-proving will. The court so found and further found that the
burden shifted to Puls to prove the will should not be admitted to
probate.

Puls wanted to examine the attesting witnesses, stating that she
had prepared a list of questions for them. The court advised that

the attesting witnesses were not present because a self-proving will could be admitted into evidence without them; upon the will's admission, no further evidence was needed to prove capacity or the lack of undue influence.

Puls then presented her evidence and arguments to contest Broderick's will. She stated the last time she saw Broderick was in June 1975, when Broderick visited her in Colorado. However, Puls stated she occasionally spoke with staff at Medicalodge, the nursing home in which Broderick resided, to check on Broderick's condition.

The trial court held that the fact Broderick was in a nursing home, coupled with the statements Puls made in her motion, constituted insufficient evidence to overcome Broderick's self-proving will. It admitted Broderick's will to probate and appointed Ludwig as executor.

On Puls' appeal, the Court of Appeals reversed. It ruled that because the trial court found that Puls filed a written defense to the admission of Broderick's will, Ludwig had the burden of proof to make a prima facie case showing capacity and due execution of that will. It remanded with directions to allow the parties to proceed with the will contest following a reasonable period of time for discovery. *In re Estate of Broderick*, 34 Kan. App. 2d 695, 125 P.3d 564 (2005).

On remand, trial on the admission of the will to probate was set for 1:30 p.m. on July 5, 2006.

On June 23, 2006, 12 days before trial, Puls faxed to the clerk of the court her pro se "Motion for Order Allowing Appearance by Telephone" and a proposed order. In the motion, Puls alleged:
(1) she had chronic medical conditions preventing her from flying or driving and she has no driver's license;
(2) a lower back disorder makes long trips difficult for her, and there was no commercial public bus or passenger train service to Leavenworth;
(3) because of her medical problems, she has not traveled outside the seven-county, Denver, Colorado, metropolitan area for many years;

(4) she had been allowed to appear by telephone at the hearing on September 20, 2004;

(5) she had prepared questions for any witnesses that the Special Administrator might call; and

(6) she had subpoenaed a witness whose testimony "will provide significant and relevant information regarding certain Medicalodge nursing home records of the Decedent."

Puls sent the fax from Morrell Printing Solutions of Lafayette, Colorado. She mailed, instead of faxed, a copy of the motion to Ludwig's counsel.

Later that same day, the trial court judge handwrote the date, his initials, and "denied" on the proposed order.

Ludwig's counsel did not file his objection to Puls' motion until June 27, probably because his copy had been mailed, and not faxed, to him. He argued that Kansas Supreme Court Rule 145 provided that a trial court may use a telephone conference call to conduct any hearing or conference except for a trial on the merits. He emphasized that the hearing would clearly be on the merits: to resolve the will contest and determine whether Broderick had capacity on the date she executed the will. Counsel also observed that for the September 20, 2004, hearing, unlike now, Ludwig's then counsel had consented to her telephone participation. He mailed a copy of his objection to Puls that day.

On July 3, 2006, 2 days before the trial, Puls faxed to the office of the district court clerk her pro se "Verified Motion to Allow Appearance by Telephone." The fax was sent from an Office Depot store in Boulder, Colorado. In her motion, Puls acknowledged that on June 30, she had received both Ludwig's objection and the trial court's denial of her first motion to appear by telephone.

In Puls' six-page motion, she argued that the court's denial of her motion to appear by telephone was disability-based discrimination prohibited by the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (2006) (ADA). She further argued the ADA "prevailed" over Supreme Court Rule 145. In support of her ADA argument, Puls also alleged:

"6. Claimant is a sixty-five-year-old disabled individual who qualifies for protection under ADA for the following reasons:

a. Claimant has been advised by her ear doctor since 1989 that she should not fly, as changes in air pressure may aggravate her chronic ear and related conditions.

b. Claimant has not driven a motor vehicle since 1976 because she has an irregular heartbeat which has caused her to faint without warning. Claimant does not have a pacemaker, nor does she have a driver's license.

c. Claimant has suffered two dislocations of her lower back and is unable to sit comfortably for long periods of time. In addition, there is no commercial public bus or passenger train service to Leavenworth, Kansas, at this time.

d. Because of her medical problems, Claimant has not traveled outside the seven-county Denver, Colorado, metropolitan area since the early 1990's."

Puls further argued that she was previously allowed to appear by telephone at the September 20, 2004, hearing (admittedly with the consent of Ludwig's counsel), and that no new equipment or arrangements would be required. She also contended that "no difficulties associated with use of the speaker telephone were noted in the transcript of the [September 20] trial." Puls finally alleged: "As demonstrated above, there is no other way Claimant, who is appearing pro se, will be able to appear."

At the July 5 trial, the trial court first acknowledged that Puls' previous counsel—who had been allowed to withdraw at Puls' request 2 weeks earlier after winning the appeal—had verified to the court that Puls knew the hearing was a trial on the merits of the petition to admit the will to probate. It confirmed that it had denied her first motion to appear by telephone. The court noted that on July 3, when Puls fax-filed her second motion, the court clerk's office had been closed by order of the Supreme Court, *i.e.*, a holiday. Because July 4 was a national holiday, the court stated that it had not seen the motion until the morning of July 5, the day of trial.

The court then initiated a telephone call to Puls for possible argument on her motion. It reached an answering machine and left a message. It was successful in its second attempt a few minutes later. Puls argued she was disabled and the ADA applied. Ludwig restated his objection pursuant to Supreme Court Rule 145. The court held the ADA did not apply because Puls was requesting to be allowed to appear by telephone, contrary to Rule 145, rather than requesting assistance in appearing in court. The court sur-

mised the rule did not allow appearance by telephone for a trial on the merits because "there are difficulties in trying to examine witnesses and to judge certain aspects of their testimony when they're appearing on telephones and also verifying who is on the other end." The court ruled that Rule 145 was specific and controlling and therefore denied Puls' request.

Puls requested that her witness, Caroline Mathia, be allowed to testify and present evidence in her absence. The court noted Mathia would have to be called as a witness for her testimony to be considered and informed Puls that it could not act as her attorney and call witnesses on her behalf. The transcript suggests that after the court thanked Puls, the telephone connection was then terminated.

Ludwig's counsel presented his evidence through four witnesses and offered "the will formally to the probate." The court responded, "in an abundance of caution" and as "somewhat of an accommodation to Ms. Puls and the Court," asking Ludwig's counsel to call and examine Puls' witness, Mathia. Counsel obliged. Mathia testified she was the administrator for Medicalodge, and that she did not know Broderick but had reviewed Broderick's medical records. Mathia stated she did not have an opinion regarding Broderick's mental capacity.

After noting Ludwig had presented evidence regarding Broderick's capacity, the court concluded he had sustained the burden of proof and admitted the will to probate. Other facts will be added as necessary to the analysis.

## ANALYSIS

### Standard of Review

The parties agree that the interpretation of a statute, the ADA, is a question of law over which this court has unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

Issue 1: *The trial court did not err in denying Puls' participation in the trial by telephone under the authority of Supreme Court Rule 145.*

Puls argues the trial court erred in denying her right, as a qualified individual with a disability under the ADA, to participate in the trial by telephone. Ludwig initially responds by arguing that numerous legitimate policy considerations underlie Supreme Court Rule 145, the trial court's stated reason for the denial. He further argues that if, as Puls contends, the ADA nevertheless preempts the State rule, then she has failed to prove she meets the conditions warranting protection by the ADA. Each argument will be addressed in turn.

*Rule 145*

At the time the trial court denied Puls' motion, Supreme Court Rule 145 stated: "In a civil case, the court, in its discretion, may use a telephone conference call to conduct any hearing or conference, *other than a trial on the merits.*" (Emphasis added.) 2005 Kan. Ct. R. Annot. 214. Our rule is consistent with K.S.A. 60-243(a), which requires trial testimony to be given orally in open court: "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by this article. . . . The competency of a witness to testify shall be determined in like manner."

As noted by the trial court, Rule 145 clearly prohibits participating in a trial on the merits by telephone. This rule has not been cited or interpreted by the Kansas appellate courts. However, it can be inferred the rule's purpose is to protect the integrity of the judicial process. For example, the trial court found that "there are difficulties in trying to examine witnesses and to judge certain aspects of their testimony when they're appearing on telephones and also verifying who is on the other end." Ludwig points out that one of the functions of the court as factfinder is to determine the weight and credibility of the witnesses. See *In re Estate of Farr*, 274 Kan. 51, 68, 49 P.3d 415 (2002). Since the demeanor of the witness is an important part of the credibility determination, Ludwig agrees the court would be limited in evaluating credibility over a telephone.

We observe that Puls apparently wished to testify, *e.g.,* her pleadings alleged that she had been checking by telephone on

Broderick at the nursing home. She also told the court in the September 20 hearing that "I have sworn and I know her [Broderick] far better, I knew her far better than any of the witnesses to her execution of the will, and I think some of the others of her family. I have sworn to what I was told by the nursing home about her condition . . . ." Ludwig also agrees with the trial court that verifying the identity of a witness would be more difficult by telephone; apparently no one associated with the July 5 trial had ever seen Puls.

We acknowledge a split of authority on the issue of telephonic testimony. See *Barry v. Lindner*, 119 Nev. 661, 668, 81 P.3d 537 (2003) (citing cases permitting telephonic testimony, particularly when special circumstances are met). And we acknowledge Federal Rule of Civil Procedure 43(a) (2007) now appears to permit it "[f]or good cause in compelling circumstances and with appropriate safeguards." See, *e.g.*, *Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1185-86 (9th Cir. 2000). But see *Byrd v. Nix*, 548 So. 2d 1317, 1320 (Miss. 1989) (trial court did not abuse its discretion in prohibiting plaintiff's expert medical witness from testifying on rebuttal by telephone, even though the witness had a severe heart condition which allegedly prohibited him from traveling); *Gust v. Gust*, 345 N.W.2d 42, 44-45 (N.D. 1984) (prohibiting telephonic testimony because of the importance of the jury's ability to directly assess witnesses' demeanors). In *Byrd*, the trial court expressed some of the same concerns as the trial court in the instant case:

"In this particular case, you are asking that a witness testify, but just not be present in the courtroom. As I have stated to you in camera, I still believe that the fact that the jury is not able to view the witness, not able to determine the demeanor and the physical appearance of the witness, I certainly don't mean to indicate that there would be anything improper done in the event the Court should allow this, but in practicality the Court would have no way of really knowing the identity of the person on the other end of the telephone without being able to see them and hear them and swear them in. The court would have absolutely no control over the witness. Not only would they not be in the courtroom, but even outside the jurisdiction of the court; and the witness might take off on any course of conduct that he should see fit, and there would be absolutely no remedy this court would have should the witness do so. Documents in evidence which the defendant may wish to cross-examine the witness on would not be able to be presented to the witness. He could not see it or review those documents, and the

process would be just much too cumbersome and to [*sic*] inexact for the court to permit this type of testimony to be brought before the jury. So the motion would be overruled." *Byrd*, 548 So. 2d at 1318.

We also acknowledge Puls' observation at oral arguments. Specifically, while K.S.A. 60-243 requires that testimony be given orally in open court, it also states "unless otherwise provided by this article." She points out that K.S.A. 60-232 allows deposition testimony to be read at trial.

Nevertheless, in the present case, the witness credibility, identity, and control problems would be compounded by Puls' desire to act as her own counsel and to participate in the entire trial by telephone. A review of the transcripts reveals this task would have been problematic. During the hearing held on September 20, 2004, in which the court allowed Puls' appearance by telephone, contrary to Puls' argument on appeal the court clearly had trouble communicating with her. According to the 26-page transcript, the court twice warned Puls that it would terminate the call if she did not allow the court to ask, and if she did not respond to, questions. On another occasion the court had to warn Puls not to interrupt.

The transcript of the July 5, 2006, trial also reveals problems. At first, the court reached only Puls' answering machine at the appointed time; however, the court was successful in reaching her a few minutes later. The 9 pages of the transcript during which Puls participated in the trial reveal that the judge had some difficulties in making himself heard by Puls, at one point directing her to "stop [talking] for a minute" and allow him to speak. The record also indicates a number of interruptions of the court by Puls.

The policy considerations underlying Rule 145 are valid and on display under the facts of this case. We conclude that the trial court did not err in following the clear language of the rule and in prohibiting Puls' telephonic participation at the trial on the merits.

*Purported preemption of Rule 145 by the ADA*

As mentioned, Puls argues she is a qualified person with a disability under the ADA; that the federal law supersedes Kansas' Rule 145; and that reasonable accommodation for her disability

was required, *i.e.*, allowing her to participate in the trial by telephone.

To establish a violation of Title II of the ADA, the United States District Court for the District of Kansas has held that a plaintiff must show

"(1) he [or she] is a qualified individual with a disability; (2) he [or she] was either excluded from participation in or denied benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [the plaintiff's] disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999); *Pahulu v. University of Kansas*, 897 F. Supp. 1387, 1389 (D. Kan. 1995)." *Sanders v. Kansas Dept. of Social and Rehabil.*, 317 F. Supp. 2d 1233, 1247 (D. Kan. 2004).

Ludwig disputes only the first requirement, arguing that Puls has failed to meet her burden to allege facts sufficient to show she is disabled. See *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (plaintiff must prove that he or she has a disability).

As a threshold matter, Puls argues in her reply brief that Ludwig never challenged at the trial court level her assertion that she was disabled. As a result, he should be precluded from raising this for the first time on appeal. See *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). The trial court acknowledged Puls' argument that she was a disabled individual under the ADA. It determined, however, that the ADA did not apply because she was not asking for physical assistance in appearing in court and therefore it did not preempt Rule 145.

Accordingly, we must first address the timing issue. Ludwig points out that he had only a brief time to respond to her motion before trial. Puls fax-filed her motion on July 3, a day when the clerk's office was closed for business. The next day, July 4, was a national holiday, and July 5 was the day of the trial. The judge stated that because he did not receive the motion until the morning of the trial, he was unable to review it until after his 10:30 docket. According to Puls' certificate of service, she also faxed a copy on July 3 to Ludwig's counsel. The record is silent, however, on when counsel actually received her newly asserted argument that she was

disabled under the ADA. Her new argument stated in relevant part:

"4. It is claimant's position that the Court's denial of her first motion to appear by telephone is a form of disability-based discrimination prohibited by Title II of the Americans With Disabilities Act of 1990 (hereinafter 'ADA'). 42 U.S.C.A. §§ 12131(1)(A)(B),(2), 12132. See also 28 C.F.R. § 35.130(a),(b)(1)(i)(ii)(vii). And further, 'Protections afforded by Americans with Disabilities Act (ADA) ensure that with or without reasonable accommodation of programs and services, disabled individual who meets essential eligibility requirements to participate in program or receive benefit in question is not discriminated against by reason of disability.' " *Maczaczyj v. State of N.Y.*, W.D.N.Y. 1997, 956 F. Supp. 403.

"5. The provisions of the Federally-enacted ADA cited above prevail over Kansas Supreme Court Rule 145, which was cited by counsel for S[pecial] A[dministrator Ludwig] in his response."

Paragraph 6 sets forth Puls' purported disabilities and limitations, as stated earlier in the opinion.

Ludwig argues that because of the brief time in which he had to respond to this new argument, various exceptions to our general rule should apply. We have acknowledged

"there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision." *State v. Kirtdoll,* 281 Kan. 1138, 1149, 136 P.3d 417 (2006).

We agree that given the short notice provided Ludwig on Puls' new legal theory over the Fourth of July holiday, the "ends of justice" exception should apply.

Turning now to the merits of Ludwig's argument that Puls has not shown that she is disabled under the ADA, we observe that 42 U.S.C. § 12102(2)(A) (2006) provides in relevant part that a disability is a "physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." The 10th Circuit Court of Appeals has held that an analysis under this statutory subsection requires a three-step process: (1) determining whether the plaintiff's condition is an impairment, (2) identifying

the life activity upon which she relies and determining whether it constitutes a major life activity under the ADA, and finally (3) determining whether the impairment substantially limited the major life activity. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1275 (10th Cir. 2005) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631, 141 L. Ed. 2d 540, 118 S. Ct. 2196 [1998]); see also *Berry*, 490 F.3d at 1216 (The burden of establishing the presence of all three elements, *i.e.*, that claimant has a disability under the ADA, is upon the claimant.).

Ludwig attacks element 1 (whether the claimed condition constitutes an impairment) and element 2 (whether the identified endeavor constitutes a major life activity). Both determinations are questions of law for the court to decide. *Berry*, 490 F.3d at 1216. Moreover, for element 2, the claimant must precisely identify the major life activity affected by his or her impairment. *MacKenzie*, 414 F.3d at 1275. Here, Puls has identified travel. Accordingly, we will first examine whether travel is a major life activity.

The Supreme Court has held that "major" means important, and that "major life activities" thus refers to those activities that are of central importance to daily life. *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 197, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002). There, regarding the major life activity of performing manual tasks, the Court ruled: "We therefore hold that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing *activities that are of central importance to most people's daily lives.*" (Emphasis added.) 534 U.S. at 198.

We continue our analysis of whether travel is a major life activity by observing that the clear weight of authority is against Puls.

In *Coons v. Secretary of U.S. Dep't*, 383 F.3d 879 (9th Cir. 2004), the claimant identified travel as the only major life activity that was limited by his impairments. The Ninth Circuit Court of Appeals held:

"There is no authority that describes air travel as a major life activity. There is, however, authority denying a plaintiff ADA relief on grounds that travel is *not* a major life activity. See *Reeves v. Johnson Controls, World Servs., Inc.*, 140 F.3d 144, 152-53 (2d Cir. 1998) (holding that 'everyday mobility,' defined by plaintiff

as, among other things, 'going to unfamiliar places that would involve staying overnight,' was not a major life activity." *Coons*, 383 F.3d at 885.

Other courts have examined the narrower question of whether driving is a major life activity. Here as well, the weight of authority is against Puls. As the 11th Circuit Court of Appeals stated in *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001):

"Major life activities are enumerated by EEOC regulation as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i). Although this enumeration is not exhaustive, *driving is not only absent from the list but is conspicuously different in character from the activities that are listed.* It would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure. We are an automobile society and an automobile economy. So that it is not entirely farfetched to promote driving to a major life activity; but millions of Americans do not drive, millions are passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to inability to see or to learn." (Emphasis added.)

The Second Circuit is in agreement. In *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998), the court held that driving "cannot reasonably be deemed major league", *i.e.*, a major life activity. Similarly, in *Yindee v. Commerce Clearing House, Inc.*, 2005 WL 1458210, at 3 (N.D. Ill. 2005), the court granted summary judgment to the employer, holding:

"Driving in and of itself is not of central importance to daily life, on par with activities such as seeing, hearing, or working in a broad class of jobs, so it is not a major life activity as that term is used in an ADA context. See *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002)."

On appeal, the plaintiff did not disagree with this assessment, and the Seventh Circuit affirmed on other grounds. *Yindee v. CCH, Inc.*, 458 F.3d 599, 601-02 (7th Cir. 2006); see also *Benko v. Portage Area School Dist.*, 241 Fed. Appx. 842, 846 (3d Cir. 2007) (in holding plaintiff failed to prove that his qualifying physical impairment—heart problems and degenerative lumbar disc disease—substantially limited a major life activity, court stated that "walking long distances" was not a major life activity because it was not of central importance to most people's daily lives).

On the specific issue of travel or driving as a major life activity, Puls cites only *Lemire v. Silva,* 104 F. Supp. 2d 80 (D. Mass. 2000). *Lemire* is easily distinguishable and actually supportive of Ludwig. It states:

"The ability to travel is also a major life activity, if defined, as the Court of Appeals for the Second Circuit suggested in *Johnson Controls, to include basic mobility, such as leaving one's home. The ability to leave one's home and travel short distances* is necessary in most cases to form and maintain social ties, earn a living, and purchase food and clothing." (Emphasis added.) 104 F. Supp. 2d at 87.

Puls' pleadings suggest that she has traveled within the "seven-county Denver, Colorado, metropolitan area for many years," just not outside of it. At the September 20, 2004, hearing, she informed the court that she had performed legal research for her pleadings in this case in the University of Colorado Law School, which is in Boulder. She also stated that she had received notice of the Broderick death when at the Denver post office in 2004. This evidence, coupled with her June and July 2006 faxes from two different stores in two different towns outside the city of Denver, all indicate she is able to leave her home and to at least travel short distances.

Accordingly, we conclude that travel—here, from the Denver, Colorado, metropolitan area to Leavenworth, Kansas, the Kansas City metropolitan area—is not a major life activity. As a result, Puls has not met her burden to establish her disability under the ADA. Consequently, her argument that the trial court erred in holding the ADA did not supersede Rule 145 must fail. Because of this missing key ingredient, we need not address Ludwig's other argument, *i.e.,* that Puls has not submitted any medical evidence to the court supporting her claim of purported impairments.

Issue 2: *The trial court's discretion in denying the motion.*

Puls additionally argues that the court abused its discretion in denying her motion to participate in the trial by telephone. This argument is also based upon the court's alleged failure to appropriately apply the ADA. *State v. Gary,* 282 Kan. 232, Syl. ¶ 1, 144 P.3d 634 (2006) (a trial court by definition abuses its discretion when it makes an error of law). We need not address this argument,

given our holding that Puls has failed to demonstrate she is protected by the ADA.

We have considered other arguments of Puls and find they have no merit.

Affirmed.

DAVIS and JOHNSON, JJ., not participating.

LARSON, S.J., and GREENE, J., assigned.