NOT DESIGNATED FOR PUBLICATION

No. 113,961

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.K., A.K., and B.K.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed December 23, 2016. Affirmed.

*Elaine M. Esparza*, of Harper, for appellant natural mother.

*Matthew W. Mullen*, deputy county attorney, for appellee.

*Shawn R. DeJarnett*, of DeJarnett Law Office, L.L.C., of Wellington, guardian ad litem.

Before MALONE, C.J., PIERRON, J., and WALKER, SJ.

*Per Curiam*.:  D.K. (Mother) appeals the district court's decision to terminate her parental rights over her three children, M.K., A.K., and B.K. Mother first claims that the district court failed to make the findings required by the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 *et seq.* (2012), before terminating her parental rights. She also claims that the evidence presented at the termination hearing was insufficient to support the district court's findings that her parental rights should be terminated. Finding no error, we affirm the district court's judgment.

The parties are well aware of the lengthy history of this case. We will only set forth the factual and procedural background necessary to support the district court's judgment. On August 1, 2013, the Sumner County Attorney filed a petition in district

court alleging that M.K., A.K., and B.K., were children in need of care (CINC). Specifically, the petition alleged that the children were found with Mother and a man, T.S., sleeping in a car at a carwash in Haysville, Kansas. The car was trashed, had a foul smell, and appeared as if the family had been living in it for several days. Mother told police that she had used marijuana and methamphetamine in the last week, and officers noted several sores on her chest and face. Officers had visited Mother's home in Wellington, Kansas, the previous day and found it to be uninhabitable. The home was trashed and had no running water or electricity. This case was the third CINC petition filed by the Sumner County Attorney involving these three children. The first two cases ultimately were dismissed after the children were reintegrated into Mother's care.

The Department of Children and Families (DCF) interviewed Mother after the children were placed into police custody. During the interview, Mother said the family was not living in the home because there was a water leak, the water was shut off, and there had been no electricity for 3 or 4 weeks. The children had been staying with their father, who had recently been released from prison, but they returned to Mother when he was kicked out of his house by his roommate. The children's father was homeless and did not have a current phone number. Mother and the children's father are no longer married.

The district court entered an ex parte order of protective custody in conjunction with the CINC petition. The district court also provided the parents with notice of the temporary custody hearing, appointed attorneys to represent the parents, and appointed a guardian ad litem (GAL) for the children. On August 12, 2013, after the district court found that ICWA was applicable in this case, the State provided notice to the Cherokee Nation and the Secretary of the Interior/Bureau of Indian Affairs Area Director. The Cherokee Nation filed a notice of intervention on September 5, 2013.

The district court held a temporary custody and adjudication hearing on September 13, 2013. Mother requested a continuance so she could hire counsel of her choice. The

State and the GAL objected to the continuance. The district court discussed the request with Mother and noted that she had been given a long time to hire an attorney and had received an appointed attorney. Mother told the district court her appointed attorney was not on her side and, when the court disagreed, Mother voluntarily left the proceedings. After Mother left the proceedings, the district court denied her request for a continuance.

After hearing testimony from several witnesses, the district court found that the health or welfare of the children may be endangered without further care. The district court also found that returning the children to the home would be contrary to their welfare because of the conditions of the home and Mother's drug problem. Accordingly, the district court placed the children in the temporary custody of the secretary of DCF.

As to adjudication, the district court found there was clear and convincing evidence that the children were in need of care. Specifically, the district court found that the children were without adequate parental care, control, or subsistence, which was not due solely to the lack of financial means of their parents. The district court also found that the children were without the care or control necessary for their physical, mental, or emotional health. The district court continued custody with DCF and ordered Saint Francis Community Services (Saint Francis) to complete reports and submit them to the court by September 25, 2013.

On November 25, 2013, the parents filed a joint motion for a stay of proceedings and transfer of jurisdiction to the Indian Tribal Court of the Cherokee Nation. The district court held a hearing on the motion on November 27, 2013. The district court approved transfer of jurisdiction to the Tribal Court of the Cherokee Nation and stayed the proceedings pending notification of acceptance or denial of jurisdiction by the tribal court. The record reflects that the tribal court ultimately decided not to accept the case.

On July 31, 2014, the district court held a hearing to determine the progress on the permanency plan goal of reintegration. The district court found that reintegration was no longer a viable goal and adoption or permanent custodianship may be in the best interests of the children. On November 6, 2014, the State filed a motion for a finding of unfitness and to terminate the parental rights of both parents.

The district court held a hearing on the motion to terminate parental rights on February 12, 2015. We will summarize only the testimony relevant to Mother. Sarah Haldeman Smith and Alyssa Brown from Saint Francis testified for the State. Brown indicated that the original goal of the case plan was reintegration of the children with the parents. The tasks the plan required were:  (1) Mother, T.S., and any other adult residing with her obtain a drug and alcohol evaluation and follow the recommendations; (2) Mother was to obtain and maintain appropriate housing that would be enforced by an initial walk-through and later random walk-throughs; (3) Mother was to maintain fulltime employment; (4) Mother was required to submit proof of paid rent and utilities on a monthly basis; (5) Mother and T.S. were required to successfully complete an age-appropriate parenting class and provide proof of completion; (6) both were required to obtain mental health assessments and follow recommendations; (7) both were required to participate in random drug testing; (8) Mother was required to provide a plan of supervision to Saint Francis; (9) Mother and T.S. were required to follow all probation requirements and not be charged with new crimes; and (10) any contact with law enforcement by Mother or T.S. was required to be reported to Saint Francis.

As of the date of the hearing, Mother had completed the following tasks:  she had completed a drug and alcohol evaluation, but she did not complete the recommendation of level 1 outpatient treatment; she reported she was employed at McDonald's, but failed to provide proof of that employment; she completed an age-appropriate parenting class; and she completed a mental health assessment, but did not complete the recommendations of the assessment. Mother did not provide a reason for failing to follow

4

through with her drug and alcohol evaluation recommendations. Mother also told Brown that she went to a couple of appointments for mental health services that were recommended in her evaluation, but she stopped going. She did not provide a reason for why she stopped going to the mental health services.

Both parents had been required to obtain appropriate housing. Mother had reported recently placing a deposit on an apartment. Brown requested that Mother call her during the previous week to set up a walk-through of the apartment, but Mother never called.

Leonard Gouge, supervisor for Cherokee Nation Indian Child Welfare, also testified at the hearing. His experience included the following: he worked for the Oklahoma Indian Child Welfare Association; he worked for Oklahoma Indian Legal Services; he worked as an Indian child welfare worker for the Seminole Nation for 2 years; he worked as an Indian child welfare worker for the Muskogee Creek Nation for 3 years; he worked as an Indian child welfare worker for the Cherokee Nation for 20 years, 14 of which he was a supervisor. Overall, Gouge had over 25 years of experience in Indian child welfare work.

Gouge testified that when this case was referred to the tribe, the tribe worked with the State, the attorneys, and the court to do what was best for the children. Gouge referred to the previous testimony at the hearing and noted that despite all the services that were offered to the parents, the parents failed to provide a home that was safe and stable for the children. Accordingly, Gouge testified that the tribe's recommendation was that the parental rights be terminated.

The district court continued the hearing to February 24, 2015. Both parents failed to appear on the second day of the hearing and their attorneys requested a continuance. Both attorneys conceded they had not had any contact with their clients since the day of

5

the first hearing. The district court ruled there was not good cause for a continuance and denied both motions.

The GAL recalled Brown as a witness. Brown testified that after the previous hearing, Mother informed her that she was breaking up with T.S., with whom she had allegedly rented a house. As a result, Brown was unsure if Mother was still living in that residence because Mother had not stayed in contact with her. Brown had attempted to contact Mother every week since the last hearing to have Mother complete hair follicle drug testing, but she did not comply. Because Mother failed to complete drug testing, she had not had visitation with the children since the last hearing. However, Brown had spoken to Mother the day before the hearing and Mother was aware of the hearing.

After hearing the evidence, the district court entered a brief ruling from the bench. The district court noted that this was the third CINC case involving the children and it was based on similar facts as the first two cases. The district court found that both parents were not willing change, despite all of the services provided, and they were not going to change in the future. The district court found "beyond a reasonable doubt" that the parents were unfit and their parental rights should be terminated. Based on the amount of time the children had spent in custody, the district court found that it was in the best interests of the children to terminate parental rights. The district court concluded the hearing by stating, "I can't recall a case where the parents have been given so many chances and failed so miserably." The district court indicated that it would file a written opinion "just in case there's an appeal."

The district court filed a memorandum of decision on April 15, 2015. In the memorandum decision, the district court found that: (1) Mother and Father were unfit parents by reason of conduct or condition which rendered them unable to properly care for their children beyond a reasonable doubt; (2) reasonable efforts made by social workers to rehabilitate Mother and Father had failed; (3) Mother and Father had shown a

6

lack of effort to adjust their circumstances, conduct or conditions to meet the needs of the children; (4) Mother and Father had failed to maintain regular visitation, contact, or communication with the children; (5) Mother failed to carry out a reasonable court approved plan directed toward the reintegration of the children into her home; (6) Father failed to carry out a reasonable court approved plan directed toward the reintegration of the children into his home; (7) the conduct or condition of Mother and Father rendered each of them unable to properly care for the children and was unlikely to change in the foreseeable future; and (8) the termination of Mother and Father's parental rights to the children was in the best interests of the children.

On April 24, 2015, the district court filed an Indian Child Welfare Act Finding of Unfitness and Order Terminating Parental Rights or Appointing Permanent Custodian. In this order, the district court specifically found that active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the family of the Indian children, and those efforts had proven unsuccessful. The district court also found that it had received and considered evidence, including the testimony of a qualified expert witness, as required by ICWA, and the evidence showed beyond a reasonable doubt that the continued parental custody of the Indian children was likely to result in serious emotional or physical damage to the children.

Mother filed a timely notice of appeal on May 21, 2015. The district court consolidated the CINC cases for each of the three children for purposes of appeal.

FINDINGS REQUIRED BY ICWA

On appeal, Mother first claims that the district court failed to make the findings required by ICWA before it terminated her parental rights to M.K., A.K., and B.K. Specifically, Mother points out that before an Indian parent's rights to a child can be terminated, a finding must be made that "active efforts have been made to provide

7

remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d) (2012). Mother also points out that termination may be ordered only where the court is satisfied beyond a reasonable doubt, supported by the "testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). Mother argues that the district court failed to make either of these required findings under ICWA.

Whether the district court complied with ICWA and made the findings required by ICWA when it terminated Mother's parental rights is a question of statutory interpretation. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

Mother completely ignores the fact that on April 24, 2015, after the termination hearing, the district court filed an Indian Child Welfare Act Finding of Unfitness and Order Terminating Parental Rights or Appointing Permanent Custodian. In this order, the district court expressly found that: "[a]ctive efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the family of the Indian child, and those efforts have proven unsuccessful." The district court noted that the efforts included, but were not limited to, services provided by DCF and Saint Francis. This is the exact finding required under 25 U.S.C. § 1912(d).

The April 24, 2015, order also stated: "The Court has received and considered evidence including the testimony of a qualified expert witness, as required by ICWA, and that evidence shows, beyond a reasonable doubt, that continued parental custody of the Indian child is likely to result in serious emotional or physical damage to the child." This is the exact finding required under 25 U.S.C. § 1912(f). Thus, Mother's claim that the

8

district court did not make the findings required by ICWA before terminating her parental rights to the children is without merit.

SUFFICIENCY OF THE EVIDENCE

Next, Mother claims that the evidence presented at the termination hearing was insufficient to support the district court's findings that her parental rights should be terminated. The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2014 Supp. 38-2250. In addition to child in need of care adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2014 Supp. 38-2269(a).

> "[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

Mother does not challenge the district court's findings that Mother was an unfit parent by reason of conduct or condition which rendered her unable to care properly for her children, and that such conduct or condition was unlikely to change in the foreseeable future. Also, Mother does not challenge the district court's finding that termination of parental rights was in the children's best interests. Mother's claim on appeal is actually a challenge to Gouge's qualifications to provide expert testimony. Specifically, Mother argues that Gouge could not provide testimony to support the district court's finding under 25 U.S.C. § 1912(f) because he did not have direct interaction with the children or their parents. This is an attack on Gouge's qualification as an expert witness rather than an attack on the sufficiency of the evidence. Whether the district court erred when it allowed Gouge to testify as an expert under 25 U.S.C. § 1912(f) is reviewed for an abuse of discretion. *In re M.F.*, 290 Kan. 142, 150, 225 P.3d 1177 (2010).

9

We note that Mother did not raise this claim before the district court. Generally, an issue not raised before the district court cannot be raised on appeal. Nevertheless, we will address the merits of Mother's argument in the interest of justice. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 778 (2009).

In *In re M.F.*, the court held that to qualify as an expert under 25 U.S.C. § 1912(f), the witness must have qualifications beyond the typical qualifications of an ordinary social worker. 290 Kan. at 155-56. The witness must either be (1) a member of the Indian child's tribe who is recognized as knowledgeable in tribal customs as they pertain to family organization and child rearing practices, (2) a lay expert witness having substantial experience in the delivery of child and family services to Indians and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe, or (3) a professional person having substantial education and experience in the area of his or her specialty. 290 Kan. at 152.

Gouge's experience clearly demonstrates that he was a qualified expert witness under 25 U.S.C. § 1912(f). Gouge was supervisor for Cherokee Nation Indian Welfare. He had 25 years' experience in Indian child welfare work. This extensive experience qualified him as a lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe. It is hard to imagine a witness with more experience in this area than Gouge. Therefore, Mother's argument that Gouge was not a sufficiently qualified expert witness is without merit.

Affirmed.